**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0348n.06

Case No. 14-5861

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 08, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NATU BAH; DIARIOU DIALLO; | ) | |
| AMINATA KABA; FATOUMATA | ) | |
| DIALLO; AICHA TCHALIM; BUILGUISSA | ) | |
| DIALLO; MARIAMA CIRE SOW; | ) | ON APPEAL FROM THE UNITED |
| DIENBOU DIALLO; ASIA BINTA KEBE, | ) | STATES DISTRICT COURT FOR |
| individually; ASSOCIATION OF AFRICAN | ) | THE WESTERN DISTRICT OF |
| HAIR BRAIDERS OF MEMPHIS | ) | TENNESSEE |
| TENNESSEE, INC., on behalf of and for the | ) | |
| benefit of concerned and similarly situated | ) | |
| members, | ) | |
| | ) | |

     Plaintiffs-Appellants,

v.

ATTORNEY GENERAL OF THE STATE
OF TENNESSEE; LINDA COLEY; NINA
COPPINGER; JUNE HUCKEBY; PEARL
WALKER-ALI; RUFUS HEREFORD; JUDY
MCALLISTER; MURIEL SMITH;
COURTNEY WILLIAMS, in their official
capacity as present or former members of the
Tennessee State Board of Cosmetology,

     Defendants-Appellees.

---

Before: SILER, BATCHELDER, and ROGERS, Circuit Judges.

     **SILER, Circuit Judge.** The Association of African Hair Braiders (the Association) and

nine individual African Hair Braiders located in Memphis, Tennessee (the African Hair

Braiders),[1] appeal the dismissal of their substantive due process claims, equal protection claims,

---

[1] Generally, this opinion refers to all plaintiffs, including the Association, as "the African Hair Braiders."

and claims asserted under the Tennessee Constitution. For the reasons explained below, we **AFFIRM**.

## FACTUAL AND PROCEDURAL BACKGROUND

The nine individual plaintiffs in this case are natives of Africa and have practiced traditional African hair braiding in the United States. The Association was incorporated in 2013 in response to the requirement that African hair braiders obtain a natural hairstylist cosmetology license before engaging in the practice of African hair braiding for compensation. The defendants are present or former members of the Tennessee State Board of Cosmetology acting in their official capacities (the Board Members) and the Attorney General of Tennessee (collectively, the defendants). African hair braiding "is a cultural art that is unique to African natives. It refers to braiding, locking, twisting, weaving, and cornrowing or otherwise physically manipulating hair without the use of chemicals that alter the physical characteristics of the hair."

Under Tenn. Code Ann. § 62-4-103(a) and § 62-4-105(e), the Tennessee State Board of Cosmetology (the Board) is vested with the supervision of the "practices of cosmetology," as well as enforcement of the Tennessee Cosmetology Act of 1986 (the Cosmetology Act). The Board has determined that individuals engaged in African hair braiding for compensation are required to obtain, at a minimum, a natural hair stylist cosmetologist license. Under the Cosmetology Act, "natural hair styling" is defined as "techniques that result in tension on hair strands such as twisting, wrapping, weaving, extending, locking or braiding of the hair by hand or mechanical appliances, which work does not include the application of dyes, reactive chemicals or other preparations to alter the color or to straighten, curl or alter the structure of the hair." Tenn. Code. Ann. § 62-4-102(a)(14). Under Tennessee State Board of Cosmetology Rule 0440-1-.03(5) (the Cosmetology Rule), an applicant to become a natural hair stylist must attain

"three hundred . . . clock hours [or] 9 credit hours of instruction." *See also* Tenn. Code Ann. § 62-4-110(f)(2). The 300 required hours are divided into two sections: 120 "general" clock hours and 180 "physical" clock hours. Tenn. State Bd. Cosmetology R. 0440-1-.03(5). The general hours encompass "[s]anitation, sterilization, bacteriology, shampooing, draping, disorders of hair and scalp, state law and salon management," and the physical hours encompass "[t]wisting, wrapping, weaving, extending, locking, braiding[,] and natural hair styling . . . ." Tenn. State Bd. Cosmetology R. 0440-1-.03(5). By comparison, a general cosmetologist is required to achieve 1,500 clock hours or 45 credit hours, and an individual licensed to practice shampooing is required to achieve 300 clock hours or 9 credit hours. Tenn. State Bd. Cosmetology R. 0440-1-.03(1) & (4).

According to the complaint, Tennessee cosmetology schools "do not teach traditional African hair braiding or provide only very little and very basic instruction on traditional African hair braiding." The African Hair Braiders are already skilled in traditional African hair braiding because it is part of their heritage and culture. There is no Tennessee licensure offered for individuals seeking to engage solely in the practice of African hair braiding. Plaintiffs Buliguissa Diallo, Deinbou Diallo, and Asia Binta Kebe[2] possess Tennessee licenses but employ or seek to employ others, including other plaintiffs, who are unlicensed to practice African hair braiding. As a result, Deinbou Diallo was cited for—among other things—allowing unlicensed African hair braiders to work for compensation.

The African Hair Braiders maintain that they face fines and potential criminal charges if they practice without a license or employ any unlicensed African hair braiders. The African Hair

---

[2] It is unclear from the complaint whether Kebe possesses a license, but she operates a business which offers hair braiding services.

Braiders also maintain that they are unable to afford spending $2,000 to $4,000 to attend cosmetology school.

The African Hair Braiders allege that the Board Members: (1) violated the African Hair Braiders' substantive due process rights; (2) violated the African Hair Braiders' equal protection rights;[3] and (3) deprived the African Hair Braiders of various rights guaranteed by the Tennessee Constitution. The African Hair Braiders sought relief through a declaratory judgment and a preliminary and permanent injunction. The district court dismissed the suit for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

"The district court's grant of a motion to dismiss is reviewed de novo." *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013). Therefore, this court must "construe the complaint in a light most favorable" to the African Hair Braiders and accept their factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

## ANALYSIS

### I. Substantive Due Process Claims

The African Hair Braiders primarily allege that the "application of the cosmetology regulatory laws against African hair braiders" violates their substantive due process rights and prevents them from pursuing their chosen livelihood. As a threshold matter, African hair braiding clearly meets the Tennessee statutory definition of "natural hair styling," which includes "techniques that result in tension on hair strands such as *twisting*, . . . *weaving*, . . . *locking*[,] or *braiding* of the hair[,] . . . which work *does not* include the application of . . . *reactive chemicals* or other preparations to alter the color or to straighten, curl or alter the structure of the hair."

---

[3] Both federal claims were asserted pursuant to 42 U.S.C. § 1983.

Tenn. Code. Ann. § 62-4-102(a)(14) (emphasis added).  By comparison, the complaint describes African hair braiding as: "*braiding*, *locking, twisting*, *weaving*, and cornrowing or otherwise physically manipulating hair *without the use of chemicals* that alter the physical characteristics of the hair."  (Emphasis added.)  The African Hair Braiders do not allege any facts in their complaint to explain how the Board reached the determination that African hair braiders must obtain a natural hair stylist license.  Accordingly, we do not address any argument related to that decision by the Board, particularly in the absence of facts or law to explain how such a decision is challenged or how we could review such a determination.

The issue is whether the African Hair Braiders have pleaded sufficient facts to show that the Cosmetology Rule—which requires natural hair stylists to attain 300 hundred clock hours to be licensed to practice for compensation—as applied to the African Hair Braiders, is not rationally related to a legitimate government interest.  *See Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007).

The parties agree that there is no fundamental right at stake.  Therefore, the Cosmetology Rule only violates the Due Process Clause if it "imposes burdens without any rational basis for doing so."  *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010) (internal quotation marks omitted).  The Cosmetology Rule is "endowed with a presumption of legislative validity . . . ."  *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1979).  "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."  *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (internal quotation marks omitted).

The African Hair Braiders do not dispute that health and safety are legitimate government interests.  A state's regulatory power "is often exercised through the enactment of licensing statutes . . . ."  *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 692 (6th Cir. 2014).  Instead, the

African Hair Braiders maintain that the Cosmetology Rule is not rationally related to such interests as applied to them.

The complaint alleges that "African hair braiding does not consist of techniques taught in natural hair stylist cosmetology schools such as styling, arranging, dressing, curling, waving, permanent waving, washing, cutting, clipping, or trimming the hair by the use of scissors, shears, clippers, flatirons, or other appliances. . . ." However, the African Hair Braiders do not address the plain language of the Cosmetology Rule, which suggests there is at least some overlap between the Cosmetology Rule requirements and the practice of African hair braiding. Four of the seven descriptive terms used to describe the "physical" requirements in the Cosmetology Rule were terms used by the African Hair Braiders to define African hair braiding in their complaint. *Compare* Tenn. Cosmetology Rule 0440-1-.03(5)(b) ("*Twisting*, wrapping, *weaving*, extending, *locking*, *braiding* and natural hair styling (emphasis added)), *with* Amended Complaint at ¶ 29 ("*braiding*, *locking*, *twisting*, *weaving*, and cornrowing . . . ." (emphasis added)). The African Hair Braiders appear to be more disappointed with the *curriculum* of the cosmetology schools offering classes to attain natural hairstyling licenses, rather than the application of the Cosmetology Rule itself. The African Hair Braiders have not connected the courses taught in cosmetology schools with the defendants in this case.

The African Hair Braiders further maintain that they are already skilled in their art and, thus, any minimal applicable training would be useless. But simply because the African Hair Braiders already know how to perform their craft does not negate Tennessee's legitimate interest in public health and safety. We can imagine that a number of professionals are already skilled in their craft before attending formal schooling and attaining licensures, but that alone does not negate the state's interest in ensuring that professionals receive training before they are

unleashed onto the public. *See Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963) ("We are not concerned with the wisdom, need, or appropriateness of the legislation.") (quotation marks and citation omitted).

The African Hair Braiders' complaint is also silent about the "general" requirements that make up forty percent of the total hours required to become a natural hair stylist. Those "general hours" refer to "[s]anitation, sterilization, bacteriology, shampooing, draping, disorders of hair and scalp, state law and salon management." Tenn. Cosmetology R. 0440-1-.03(5)(a). The complaint does not allege that the African Hair Braiders do not need to know about techniques related to sterilization and the safety of their clients. Instead, the complaint alleges that African hair braiding is "safe." The complaint further states that African hair braiding is safer than harsh chemical treatments that are often used on women with textured hair. But pleading facts that African hair braiding is safer than chemical treatments and stating in a conclusory fashion that African hair braiding is generally "safe" do not factually negate Tennessee's legitimate interest in public health, safety, and welfare. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("[T]he allegations are conclusory and not entitled to be assumed true."). In short, the complaint does not contain facts that "nudge[] [their] claims . . . across the line from conceivable to plausible." *Id.* at 680 (internal quotation marks omitted).

In their reply brief, the African Hair Braiders insist that "merely because the language used by [p]laintiffs to describe African hair braiding styles is similar to that used in the natural hair style licensing scheme, this does not mean that the methods and outcome of the styles are the exact same." But in so arguing, the African Hair Braiders prove that they have failed to state a claim. "The legislature need not produce mathematical precision in the fit between justification and means when enacting . . . legislation." *Am. Exp. Travel Related Servs. Co. v.*

*Kentucky*, 641 F.3d 685, 693–94 (6th Cir. 2011) (internal quotation marks omitted); *see also Heller*, 509 U.S. at 321 ("A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." (internal quotation marks omitted)). While we are sensitive to the cultural and unique nature of African hair braiding, such a distinction does not shield it from licensing laws, imperfect as the rules may be. The district court correctly found that "[w]hile [p]laintiffs' allegations plausibly suggest an imperfect fit between Tennessee's licensing scheme and [p]laintiffs' practice of African hair braiding, the [a]mended [c]omplaint does not show that Tennessee's requirements are *irrational*." (Emphasis added.)

The African Hair Braiders next cite *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999), in support of their position. In *Cornwell*, a California district court granted summary judgment in favor of a hair braider who "lock[ed]" hair for compensation because it held the California requirement that the hair braider take a 1600-hour cosmetology course and pass a licensing exam was not rationally related to a legitimate government interest. *Id.* at 1107, 1118–19. The facts in *Cornwell* are distinguishable from the facts of the present case. The plaintiff in *Cornwell* was required to complete 1600 hours of coursework and pass a licensing exam. *Id.* at 1119. The licensing exam encompassed subjects ranging from "hair removal" to "haircutting." *Id.* at 1116. In other words, the plaintiff in *Cornwell* was required to become a full cosmetologist to practice African hair braiding. By contrast, the African Hair Braiders in this case merely are required to take twenty percent of the hours required to become a regular cosmetologist, and the same number of hours as someone engaging in "shampooing." Tenn. State Bd. Cosmetology R. 0440-1-.03. In short, *Cornwell* is neither binding nor persuasive with respect to the facts of this case.

The African Hair Braiders also complain that they should be permitted to at least pursue discovery, but "only a complaint that states a plausible claim for relief" can "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79. The African Hair Braiders assert in their brief that "as many as 299 [of the 300 required] hours could be for training that [p]laintiffs will never use and do not need to practice their trade." Yet, their complaint fails to assert any facts that could lead to such a conclusion. The complaint does not address the required sanitation courses. Even their allegation that "Tennessee natural hair braiding cosmetology schools either do not teach traditional African hair braiding or provide only very little and very basic instruction on traditional African hair braiding," does not result in the conclusion that "as many as 299" hours could be useless. The sanitation courses and courses on braiding, however basic, are rationally related to Tennessee's legitimate interest in the safety and health of their residents. But even assuming that 299 of the 300 required hours are for training the African Hair Braiders will never use, such training is a product of what a cosmetology school *teaches*, not what the Cosmetology Rule *requires*. While we understand that the African Hair Braiders' complaint concerns the application of the Cosmetology Rule, we cannot, from the facts in the complaint, connect the defendants to the courses taught in Tennessee cosmetology schools.

Although "rational basis review is not a rubber stamp," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), the African Hair Braiders have failed to plead sufficient facts to show that the Cosmetology Rule, as applied to them, was not rationally related to a legitimate government interest. Accordingly, the district court properly dismissed the African Hair Braiders' claims.

## II. Equal Protection Claims

The African Hair Braiders next appeal the district court's dismissal of their equal protection claims. The Fourteenth Amendment provides that "[n]o State shall . . . deny to any

person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Since the African Hair Braiders' claim does not concern a suspect class or fundamental right, the state's action is subject to rational-basis review.[4] *See Sadie v. City of Cleveland*, 718 F.3d 596, 601 (6th Cir. 2013). For the reasons explained below, these claims were also properly dismissed.

"[E]qual protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens *differently* than others*." Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008) (internal quotation marks omitted) (emphasis added). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Here, as the district court concluded, the African Hair Braiders have failed to assert facts that indicate that the defendants, through the Cosmetology Rule, "treated them differently than other similarly situated individuals, for example, that [d]efendants have permitted other similarly situated [individuals] to engage in commercial African hair braiding without a license."

The African Hair Braiders allege that Tennessee will not "accept certification and/or licenses issued by other states to African hair braiders[,]" while "[a] manicurist who has been issued a license in another state" can receive a reciprocal license. The district court accurately viewed the complaint's reference to manicurists as an attempt to assert a selective enforcement

---

[4] The African Hair Braiders' complaint does state they have been treated differently than manicurists, who are comprised of "persons of Asian descent and other persons outside the [p]laintiffs' protected class." But this statement does not establish how African Hair Braiders are members of a protected class. While African hair braiding is associated with individuals of African descent, this alone does not equate to a protected class. Although not pleaded in their complaint, the African Hair Braiders also assert in their brief that "[t]his law targets a suspect class, that is Africans, and it has a discriminatory effect on Africans." Since this argument was not pleaded in their complaint, and the African Hair Braiders did not seek to amend their complaint a second time, our court is an inappropriate forum to entertain new factual allegations. *See Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 399–400 (6th Cir. 2013).

claim because the portion of the Cosmetology Act at issue would facially apply to all individuals under the Cosmetology Act, including African Hair Braiders. Tenn. Code Ann. § 62-4-116. Any attempt to assert a selective enforcement claim suffers several fatal flaws.

"In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated[—]but for the illegitimate classification used by the government actor[—]was treated differently." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). First, the African Hair Braiders did not claim that any individual African Hair Braider had a license to practice African hair braiding from another state, nor did they allege that any individual African Hair Braider applied to receive a reciprocal license from the state of Tennessee. They also did not plead that the Board had rejected any of their reciprocal licensure applications for African hair braiding. In sum, they have not pleaded facts sufficient to show that they were treated *differently* from the way in which manicurists were treated because they have not cited any attempt to receive reciprocal licensing. Finally, the African Hair Braiders have failed to state how they are similarly situated to the manicurists.

Next, the African Hair Braiders cite dicta from *Jenness v. Fortson*, 403 U.S. 431, 442 (1971), and claim that the defendants violated their equal protection rights by "treating things that are different as though they were exactly alike." However, other courts have rejected similar arguments asserted as part of an equal protection claim because such a claim is better characterized as a substantive due process claim. *See Merrifield v. Lockyer*, 547 F.3d 978, 984–86 (9th Cir. 2008). The African Hair Braiders' brief is peppered with precedent they assert further supports this position.[5]

---

[5] The African Hair Braiders also cite the Supreme Court case *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). In *Yick Wo*, the Court held that a facially neutral municipal ordinance—which was "enforced exclusively against Chinese laundry operators" with no proffered reason for doing so—violated the Equal Protection Clause. *See Spurlock v. Fox*, 716 F.3d 383, 401 (6th Cir. 2013); *see also Yick Wo*, 118 U.S. at 374. By contrast, the African Hair Braiders

For example, the African Hair Braiders cite *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002). In *Craigmiles*, we affirmed the district court's holding that a Tennessee law which prohibited the sale of caskets by anyone other than a state-licensed funeral director was unconstitutional. *Id.* at 223, 299. We determined, in part, that the statute failed rational basis because "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Id.* at 224. By contrast, the African Hair Braiders' complaint does not assert that the Cosmetology Rule protects a discrete interest group; nor could it. The Cosmetology Rule applies generally to all individuals classified as "natural hair stylists."

In *Craigmiles*, while we affirmed the district court's finding based on substantive due process and equal protection grounds, we were primarily focused on rational basis review, which applied to both the substantive due process and the equal protection claims. *See Merrifield*, 547 F.3d at 985. We never addressed whether any other groups were similarly situated to the casket-makers. *See Craigmiles*, 312 F.3d at 224. Instead, the casket makers alleged that they were *different* from the funeral directors and that the Tennessee law treating them the *same* was an unconstitutional barrier to their chosen profession that lacked any rational basis. *See id.* at 225 ("The question before this court is whether requiring those who sell funeral merchandise to be licensed funeral directors bears a rational relationship to any legitimate purpose other than protecting the economic interests of licensed funeral directors."). Equal protection claims are generally stated just the opposite—that the plaintiff is similarly situated to another individual but the defendant treated the plaintiff disparately with no rational basis for doing so. As the Ninth Circuit similarly explained with regard to *Craigmiles*:

---

have not alleged that the Cosmetology Rule has been enforced only against them. Furthermore, the defendants have provided multiple legitimate, proffered reasons for the existence and enforcement of the Cosmetology Act and Cosmetology Rule. Finally, *Yick Wo* again involved similarly situated individuals that were treated differently, not a group of allegedly *different* individuals treated the same.

> The casket retailers in *Craigmiles* argued that their business was *so different* from funeral directors that the government's interest in public health and safety in regulating funeral directors was not implicated. In other words, although the casket sellers brought claims under both the Due Process and Equal Protection Clauses, and the Sixth Circuit affirmed on both grounds, their argument was not that they were being treated differently in violation of the Equal Protection Clause, but that they were suffering an unconstitutional barrier to practice their profession—a due process claim.

*Merrifield*, 547 F.3d at 985 (internal citation omitted).

In short, the complaint lacks any indication that the African Hair Braiders were treated differently from other similarly situated individuals, and, therefore, the district court did not err by dismissing those claims.

### III. Tennessee Constitution Claims

Having dismissed both federal claims and pursuant to 28 U.S.C. § 1367(c)(3), the district court properly declined to exercise supplemental jurisdiction over the African Hair Braiders' claims asserted under the Tennessee Constitution.[6]

**AFFIRMED**.

---

[6] The defendants maintain that we should dismiss with prejudice the African Hair Braiders' claims asserted under the Tennessee Constitution. The defendants argue that "the Supreme Court has held that § 1367(a)'s grant of jurisdiction does not extend to claims that are barred by the Eleventh Amendment" and cite *Raygor v. Regents of the Univ. of Minnesota*, 534 U.S. 533, 541–42 (2002) in support of their position. However, the district court exercised its discretionary authority to *decline* supplemental jurisdiction under § 1367(c)(3), not pursuant to subsection (a)'s grant of jurisdiction. Furthermore, the Supreme Court in *Raygor* held "that § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." 534 U.S. at 542. Such a holding does not require the district court to wade into the merits of state law claims solely to ensure that such claims are not barred by the Eleventh Amendment before declining to exercise supplemental jurisdiction.