RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

WILLIAM STRASER,

                *Plaintiff-Appellant*,

    *v.*

CITY OF ATHENS, TENNESSEE; CHRIS TREW; GENE MCCONKEY,

                *Defendants-Appellees*.

No. 19-5689

─────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:18-cv-00187—Thomas W. Phillips, District Judge.

Decided and Filed: February 28, 2020

Before: COLE, Chief Judge; BOGGS and SUTTON, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ON BRIEF:** Van R. Irion, LAW OFFICE OF VAN R. IRION, Knoxville, Tennessee, for Appellant. John T. Batson, Jr., Dan R. Pilkington, WATSON, ROACH, BATSON & LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellees.

─────────────

## OPINION

─────────────

SUTTON, Circuit Judge. William Straser alleges that the City of Athens, Tennessee violated the Fourteenth Amendment when it enforced a zoning ordinance against him based on his Christian beliefs. That sounds ominous. But the evidence to support the claim arose only when Straser complained about the fine, and a City employee explained that the City enforced it

against everyone, including a Muslim neighbor who recently violated the ordinance as well. A government that enforces its laws equally against those of different faiths honors—it hardly violates—the neutrality imperative of the Fourteenth Amendment. We affirm the district court's rejection as a matter of law of this claim and two others.

Straser built a carport in 2009. It sits about 17 feet from the road. A city zoning ordinance requires carports to be 30 feet from the road. Between 2011 and 2017, the city notified Straser four times that his carport violated the rule.

In 2016, the city cited Straser's neighbor for violating the setback rule with his own carport. The neighbor accused the city of targeting him for enforcement based on his race and Muslim religion.

In 2017, the city cited Straser for his too-close-to-the-road carport. Straser hired an attorney, who called City Attorney Chris Trew to resolve the citation. Trew told them that the City would not dismiss the citation because the carport violated the ordinance and because it refused to give Straser preferential treatment. During the call, Trew mentioned the City had "had trouble with a Muslim" who complained about a similar violation. R. 24-4 at 24. True to its word, the City charged Straser, and the municipal court upheld the fine.

Irked by this evenhandedness, Straser sued the City, Trew, and Building Inspector Gene McConkey, claiming they violated his constitutional rights by fining him because he is a Christian and because they didn't want to favor him over his Muslim neighbor.

Straser sought permission to amend his complaint to add claims that the City violated the Americans with Disabilities Act when it charged him a fee for disability-based applications for zoning-ordinance variances. The carport, Straser explained, helped him manage his diabetic neuropathy by making it easier to use his car during inclement weather. The district court denied the motion because the statute of limitations barred the claim.

The three defendants moved for summary judgment. Before the court ruled on the motion, Straser sought permission to amend his complaint again. This time, he asked to add a

request for declaratory relief. The district court granted summary judgment to all three defendants and rejected the amendment as futile.

*Selective enforcement.* Straser claims that Trew violated his federal equal-protection rights by fining him because of his religion. Selective-enforcement claims require the claimant to show that (1) he belonged to a particular race, religion, or other identifiable group; (2) the official did not enforce the rule against similarly situated people outside the group; (3) the prosecution stemmed from a discriminatory purpose; and (4) the prosecution had a disparate effect. *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000).

Straser satisfies the first element, group membership. He alleges that Trew enforced the 30-foot rule against him because he is a Christian.

He does not satisfy the next element, differential enforcement. Straser does not identify any cases in which the City refused to enforce the 30-foot rule against non-Christians. All he points to is Trew's *enforcement* of the ordinance against someone outside Straser's identified group—his Muslim neighbor. That's not discrimination. It's equal treatment, indeed the epitome of equal treatment.

Straser counters that many local structures violate the 30-foot rule. But that list of structures suffers from at least two defects. Straser fails to show that non-Christians own the structures. And he does not claim that Trew failed to enforce the 30-foot rule against the structures. For all we know, Trew enforced the ordinance against every structure on the list. Beyond that, the list could be full of examples of Trew enforcing the ordinance against people who do not share Straser's faith.

On top of that problem rest two others. Straser has failed to show discriminatory purpose and effect. Straser's own account of his conversation with Trew shows that Trew was committed to evenhanded enforcement. Trew explained that he would not excuse the violation because Straser's carport violated the ordinance and because Trew could not "treat him specially." R. 24-5 at 9. Straser has provided no reason—let alone the necessary clear evidence required in this setting, *Gardenhire*, 205 F.3d at 319—to think Trew knew of Straser's religious beliefs. That makes it hard to view Trew's comments as demonstrating a discriminatory purpose or effect.

Straser insists otherwise, invoking Trew's comment that the city "had trouble with a Muslim." R. 24-4 at 24. But that comment shows only that Trew refused to treat Straser *differently* from someone outside his identified group. Equal treatment does not a selective enforcement claim make.

Straser thinks our analysis should proceed differently because he asserts a "class-of-one" selective enforcement claim. But we have analyzed similar claims under the standard framework for selective-enforcement claims. *E.g.*, *Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 529–31 (6th Cir. 2018). Straser's claim would fail under the class-of-one framework anyway. He cannot show that the City treated him differently from similarly situated people. *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 549 (6th Cir. 2007).

Straser presses us to use a different approach to these claims, one that prioritizes direct evidence of discriminatory purpose—the phone call with Trew being the smoking gun—over any discriminatory impact on the claimant. We could not indulge him even if we thought Trew should have described the neighbor's accusation differently. Our circuit has already settled on a standard for selective enforcement claims, and the Supreme Court has not displaced it. *See Gardenhire*, 205 F.3d at 319; *Willowbrook v. Olech*, 528 U.S. 562, 563–65 (2000) (per curiam). The claim fails as a matter of law.

*Declaratory judgment amendment.* Straser moved to amend his complaint to add a request for a declaration that the city's prosecution violated his equal-protection rights. The district court rejected the motion and did not commit reversible error in doing so. The key problem, among many lesser problems, is that the original complaint already included a request for declaratory judgment. No prejudice occurred.

*Disability-based amendment.* Straser separately sought permission to add a claim that the city violated the Americans with Disabilities Act by charging a non-refundable $135 fee before it would consider requests for zoning variances. The district court refused to permit that amendment on futility grounds because the statute of limitations barred the claim.

Everyone agrees that claims under the Act must be brought within one year of accrual, thanks to the Act's borrowing of Tennessee's statute of limitations. Tenn. Code Ann.

§ 28-3-104(a)(1)(B); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000). Competing theories of the claim's accrual date abound in the parties' briefs. Perhaps the claim accrued when Straser learned of the policy in 2011? Or with each of the warning letters the city sent Straser between 2011 and 2017? Or when the city began prosecuting him in April 2017?

Only one theory matters, the one that could render Straser's claim timely. The City, this theory proposes, violates the Act anew every day it refuses to change the variance application policy or drop its prosecution. Two "continuing violation" possibilities exist. *Dixon v. Anderson*, 928 F.2d 212, 216–18 (6th Cir. 1991). One refers to a series of discriminatory actions; the other refers to an ongoing discriminatory policy. *Id.* at 216–17.

As to the first possibility, Straser claims that the City engaged in a series of discriminatory actions by daily refusing to drop the prosecution or waive the application fee. But that is just another way of targeting the ongoing effects of the City's allegedly discriminatory actions. Nor does *Dixon* support Straser. In that case, the State allegedly discriminated anew each time it cut the plaintiffs a paycheck that adhered to its challenged retirement contribution policy. *Id.* at 214. Because the paychecks amounted to ongoing effects, not continuing violations, the statute of limitations barred the suit. *Id.* at 217.

The second paradigm is an ongoing discriminatory policy or environment. *Id.* at 217–18. Mere continuing existence of an allegedly discriminatory policy does not extend the statute of limitations. *Lewis v. City of Chicago*, 560 U.S. 205, 212 (2010). If the policy results in an allegedly discriminatory act within the limitations period, the plaintiff may challenge the policy. *Amtrak v. Morgan*, 536 U.S. 101, 117–18 (2002). Without such an act, challenges to the policy are time-barred if the policy was adopted outside the limitations period. *Id.*

Straser points to a policy but cannot identify a discriminatory act within the limitations period. The City's prosecution of Straser's ordinance violation comes closest to counting. But that started outside the limitations period too, almost two years before Straser added the claim to his complaint. If the *Dixon* employer's paycheck-by-paycheck refusal to change its policy did not count as a separate discriminatory act, neither does the city's day-by-day refusal to drop the prosecution or waive the application fee. *Dixon*, 928 F.2d at 217. "[M]ere existence of an

alleged policy of violating equal protection rights," to repeat, "will not toll the running of the statute of limitations." *Id.*

We affirm.