NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0474n.06

Case No. 25-3222

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 17, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| APRIL NORMAN, | ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| CITY OF CINCINNATI, OH, et al., | ) ) | |
| Defendants-Appellees. | ) ) | OPINION |

Before: GIBBONS, McKEAGUE, and RITZ, Circuit Judges.

**McKEAGUE, Circuit Judge.** The Auburn Avenue Corridor Strategic Development Plan was adopted to guide revitalization of a particular area in Cincinnati's historic Mt. Auburn neighborhood. In both developing the Plan and subsequently putting it into action, April Norman alleges that the City of Cincinnati, Christ Hospital Network, Mt. Auburn Community Development Corporation, God's Bible School and College, Grossman Group Design and Planning, and DiSalvo Development Advisors, LLC, along with dozens of those entities' employees, violated federal and state law. The district court granted defendants' motions to dismiss. Because Norman's claims are not plausibly alleged, we **AFFIRM**.

**I.**

At this stage, we accept the well-pled facts from the complaint as true. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

104 Valencia Street is a residence located in the Mt. Auburn neighborhood of Cincinnati, Ohio. In 2016, the then-property owner received a notice of various building code violations, including deteriorating paint, a damaged chimney, a missing or rotted soffit, and missing or leaking gutters.[1]

Several years later, April Norman, an African American woman, purchased the property. A few months after the title changed hands, Norman received a notice of building code violations from the City. It identified the same problems as the earlier notice: deteriorating paint, a damaged chimney, a missing or rotted soffit, and missing or leaking gutters. Norman took steps to make some repairs. But not all the violations were addressed, so she received several bills for abatement of fees and at least one additional notice of violations. Norman's property was also flagged twice for too-tall grass and excessive weeds. She also received a notice to register her property as a rental property. Through it all, Norman alleges that her efforts to contest the notices fell on mostly deaf ears.

Along with the notices, Norman also received dozens of offers from developers to purchase her property. Those solicitations, she contends, "became more frequent and aggressive coinciding with the City's notices." Compl., R. 1 at PageID 13. In fact, during one interaction, Norman learned that a developer "had been given a list of properties and was told to make offers for purchase." *Id.* at PageID 15.

---

[1] The district court considered certain documents attached to the motions to dismiss. On appeal, Norman does not object to that consideration, so we consider those documents as well. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."); *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

But Norman did not sell, and when the building code violations at her property persisted, the City issued Norman a civil citation. In preparing to dispute that charge, Norman claims that she first learned of the Auburn Avenue Corridor Strategic Development Plan. According to Norman, the Plan was developed by Grossman Group Design and Planning, based in part on a market assessment completed by DiSalvo Development Advisors. The Plan was formally adopted by the City, and other "stakeholders" include Christ Hospital Network, God's Bible School and College, and Mt. Auburn Community Development Corporation. The purpose of the Plan, according to Norman, is to "[i]dentify and solicit development interests for possible redevelopment opportunities" along Auburn Avenue. Compl., R. 1 at PageID 18.

As Norman sees it, the Plan is discriminatory. She alleges it "was developed from [a] review of the [City's] Department of Building and Inspections records targeting single-family homes that the City had ordered vacant due to code violations . . . which . . . targeted predominantly African-American neighborhoods." *Id.* (citation and quotation marks omitted). She claims that the Plan "utiliz[ed] wide-spread and aggressively targeted enforcement and zoning policing," which explains why her "property has been the continuing target of harassment and cavalier code citations." *Id.* at PageID 20, 24. She contends that "no comparable plan . . . [was] ever applied to non-African-American areas of the City." *Id.* at PageID 20.

In the end, the civil citation issued to Norman was dismissed, but the orders to remedy her property were not rescinded. As a result, Norman received several additional notices of building code violations, some new and some old.

This lawsuit followed. As we read Norman's complaint, she claims that the Plan and notices of building code violations were all an effort to force her (and other African American residents) out of the Mt. Auburn neighborhood in the name of redevelopment. She claims the

defendants violated her equal protection rights and conspired to violate her rights, and that the City extorted her. Some defendants moved to dismiss, and others moved for judgment on the pleadings. In a thorough opinion, the district court found that Norman's claims were both time barred and inadequately pled. Norman appealed.

## II.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The same standard applies to a motion for judgment on the pleadings. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). While detailed factual allegations are not required at this stage, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation modified). In other words, pleaded facts that "are 'merely consistent with' a defendant's liability" will not do. *Id.* (quoting *Twombly*, 550 U.S. at 557). At bottom, a plaintiff's factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We review the sufficiency of a complaint de novo. *Napolitano*, 648 F.3d at 369.

## III.

### A.

#### 1.

Norman labels her first claim as one for deprivation of equal protection. At a high level, it is clear Norman takes issue with the Plan and the City's building code enforcement practices. Beyond that, however, her precise theory is hard to pin down. Reading the complaint liberally, as

best we can tell, Norman alleges that the defendants (1) developed and adopted the Plan with the nefarious purpose of driving African American residents out of the Mt. Auburn neighborhood, and (2) selectively targeted her property for code violations to further that goal.

As the district court did, we construe Norman's equal protection claim as arising under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, which prohibits a government entity from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. That clause, in effect, is a directive "'that all persons similarly situated should be treated alike.'" *Lathfield Invs., LLC v. City of Lathrup Vill.*, 136 F.4th 282, 303 (6th Cir. 2025) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). As a result, to state a meritorious equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons." *Napolitano*, 648 F.3d at 379 (citation modified).

No matter her precise theory, Norman has not alleged a plausible equal protection claim. As the district court and defendants point out, the property received a notice of code violations in late 2016—years before Norman ever owned the property and prior to the Plan being adopted. That timeline alone undermines the plausibility of Norman's allegation that code enforcement was targeted at her or used to further the goals of the Plan.

But even putting that issue aside, pleading deficiencies exist as to Norman's claim that the defendants unlawfully targeted her property for code violations. "In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated—but for the illegitimate classification used by the government actor—was treated differently." *Bah v. Att'y Gen. of Tenn.*, 610 F. App'x 547, 554 (6th Cir. 2015) (citation modified); *Straser v. City of Athens*, 951 F.3d 424, 426 (6th Cir. 2020). Here, as the district court

concluded, Norman's complaint does not allege that the City failed to issue code violations to similarly situated, non-African American property owners in Mt. Auburn. And, on appeal, Norman does not argue otherwise. *See Doe v. Michigan State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021) ("An appellant abandons all issues not raised and argued in its initial brief on appeal." (citation modified)).

Instead, Norman looks more broadly. She points to her allegation that "wide-spread and aggressively targeted enforcement and zoning policing by the City" were not "applied to non-African-American areas of the City." Compl., R. 1 at PageID 20. But that broader allegation suffers the same flaw: Norman does not identify a similarly situated neighborhood that received more favorable treatment. And her conclusory allegation "that a hypothetical . . . comparator would have received more favorable treatment [is] not entitled to an assumption of truth." *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *7 (6th Cir. Aug. 18, 2022); *Daniels v. City of Wyoming*, No. 17-3133, 2017 WL 7661477, at *3 (6th Cir. Oct. 5, 2017) (affirming dismissal when plaintiff alleged in only "a conclusory manner that [the defendant] issued a relatively high number of traffic citations on a two mile stretch, to a relatively high number of nonwhites" (quotation marks omitted)); *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 329 (6th Cir. 2013) (affirming dismissal when plaintiffs "allege[d] no facts that allow[ed] a reasonable inference that [an] ordinance was not enforced against other persons or groups in similar situations and have thus failed to state a claim"). Nor does the complaint make any effort to allege how other areas of the city are similarly situated. *Bah*, 610 F. App'x at 554 (affirming dismissal because, among other flaws, plaintiffs "failed to state how they are similarly situated" to a potential comparator).

Norman's allegations about the Plan fare no better. She points to several paragraphs of the complaint and argues that the defendants "jointly developed a plan for the gentrification of

specifically delineated and targeted African-American areas of the City." Appellant Br. at 21. But Norman's complaint does not back up that sweeping conclusion with factual allegations. Of course, in some cases "a neutral law [that] has a disproportionately adverse effect upon a racial minority" can form the basis of an equal protection claim, but only if the plaintiff alleges that such an impact "can be traced to a discriminatory purpose." *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979); *Arsan v. Keller*, 784 F. App'x 900, 912 (6th Cir. 2019) ("[O]nly intentional, purposeful discrimination violates the equal protection clause.").

We agree with the district court that Norman does not clear that hurdle. True, she alleges that the "Plan was developed from [a] review of the [City's] records targeting single-family homes that the City had ordered vacant due to code violations, which again targeted predominantly African American neighborhoods." Compl., R. 1, at PageID 18 (citation and quotation marks omitted). But that conclusory statement seems to acknowledge that the Auburn Avenue Corridor was selected for redevelopment based on a variety of benign factors, including its vacant properties. Even if there are high vacancy rates in predominantly African American neighborhoods, Norman does not allege any facts to support the conclusion that defendants were motivated by that correlation in developing and adopting the Plan. *Iqbal*, 556 U.S. at 681 (recognizing that when "bare assertions . . . amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, namely, that [defendants] adopted a policy because of, not merely in spite of, its adverse effects upon an identifiable group," those "allegations are conclusory and not entitled to be assumed true" (citation modified)); *Robinson v. Amble*, No. 18-2176, 2019 WL 5152775, at *2 (6th Cir. July 17, 2019) ("A complaint that sets forth conclusory allegations of discriminatory intent without additional supporting details is insufficient to support relief."). Norman, for example, fails to identify a similarly situated neighborhood where a

7

development plan was not adopted. Once again, her "conclusory and unadorned assertion[]" is "not well-pleaded, and not entitled to a presumption of truth at this stage in the litigation." *Napolitano*, 648 F.3d at 379; *Reynolds*, 2022 WL 3500191, at *7; *Daniels*, 2017 WL 7661477, at *3; *Faith Baptist Church*, 522 F. App'x at 329; *see also Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 684 (2011) (reversing and directing dismissal when "[n]othing but legal conclusions suggest[ed] that [the defendants] acted with unlawful discriminatory animus").[2]

To be sure, at this early stage, Norman is not required to offer "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (citation modified). But she must make more than "conclusory allegations bereft of supporting details." *Reynolds*, 2022 WL 3500191, at *8. Because Norman has not backed up her conclusions with pleaded facts to plausibly suggest that the defendants developed and adopted the Plan with a discriminatory motive or singled out her property for code violations, she has not plausibly alleged an equal protection claim.

**2.**

Norman's invocation of federal statutes does not save her claim. In her complaint, Norman somewhat confusingly cites 42 U.S.C. § 5302, the Housing and Community Development Act's definitional provision. Perhaps recognizing that oddity, the district court analyzed Norman's

---

[2] Norman's equal protection claim seems to lack plausibility for other reasons as well. For example, it is not clear that her Valenica Street property falls in the specific development areas contemplated by the Plan. To be sure, the plan includes maps of the Mt. Auburn and Over-the-Rhine neighborhoods. And Norman's property, along with a host of others in the Mt. Auburn neighborhood, are identified on a map of vacant and condemned properties, as well as maps indicating current property usage and zoning. But, as we read the Plan, it calls for rezoning of only two parts of Mt. Auburn and flags four "key" areas for potential redevelopment: the City View Zone, the Historic Five Points Zone, the Medical/Cultural Zone, and the Northern Historic Gateway Zone. The Plan also identifies two specific Concept Sites and several other Opportunity Sites. Yet none of those areas encompass Norman's property. It is unclear, then, how Norman alleges the Plan impacts her property. Perhaps, she believes the planned development—even if limited to a particular corridor of Mt. Auburn—will have spillover effects and negatively impact her property. If so, she does not allege as much in her complaint.

statutory claim under 42 U.S.C. § 5309, a neighboring provision that prohibits certain types of discrimination by entities receiving government funding. Nonetheless, it concluded that § 5309 did not create a private right of action. On appeal, Norman does not take issue with that conclusion. As a result, she has abandoned that claim. *See Doe*, 989 F.3d at 425.

Instead, Norman argues, for the first time, that her complaint states a claim under 42 U.S.C. § 3613—a provision of the Fair Housing Act. Invoking that section, Norman asserts that the district court "is wrong" and "a private right does exist." Appellant Br. at 25. To be sure, private persons can enforce their rights under the Fair Housing Act. 42 U.S.C. § 3613 ("An aggrieved person may commence a civil action" challenging an "alleged discriminatory housing practice"). But there is no mention of § 3613 or the Fair Housing Act anywhere in the complaint. And, in opposing defendants' motions to dismiss, Norman did not argue that § 3613 was the basis for her claims. Quite the opposite, Norman seemed to suggest her equal protection claims do not arise under statute at all. *See* R. 37 at PageID 722. As a result, Norman has forfeited any argument that § 3613 applies. *Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019) (recognizing that "arguments raised for the first time on appeal are forfeited" as are "issues not raised in response to dispositive motions" (citation modified)).

\* \* \*

All told, Norman has not alleged a plausible equal protection claim against any of the defendants.

**B.**

Norman also makes a host of conspiracy allegations. Here again, there is some confusion about the source of her claims. If they arise under 42 U.S.C. § 1983 or 42 U.S.C. § 1985, they are inadequately pled because, as we discussed above, Norman has not plausibly alleged that any of

9

the defendants violated her equal protection rights or acted with discriminatory animus. *See Montgomery v. Ferentino*, No. 20-3114, 2021 WL 3204843, at \*3 (6th Cir. Feb. 24, 2021) ("In the absence of a viable underlying constitutional claim, the district court did not err by dismissing [the plaintiff's] claim of a conspiracy to violate his constitutional rights."); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee ex rel. Traffic & Parking Comm'n*, 805 F. App'x 379, 384 (6th Cir. 2020) ("§ 1985 claims must allege 'class-based, invidiously discriminatory animus.'" (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). And Norman has offered no factual allegations to support a conclusion that any defendant violated Ohio law, so her state law conspiracy claim likewise fails. *Sal's Heating & Cooling Inc. v. BERS Acquisition Co*, 192 N.E.3d 537, 544 (Ohio Ct. App. 2022) ("[A]n action for civil conspiracy [under Ohio law] cannot be maintained unless an underlying unlawful act is committed."). More to the point, Norman's allegations that the non-City defendants were "stakeholders" or "collaborator[s]" fall woefully short of plausibly alleging a conspiracy. Compl., R. 1 at Page ID 11-12, 19. As do the slightly more specific allegations concerning Grossman Group's role in leading development of the Plan and DiSalvo Development Advisor's role in conducting a market assessment. *Id.* Beyond those high-level assertions, Norman does not "set forth any additional factual allegations indicating when, where, or how the defendants conspired" to harm her. *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 477 (6th Cir. 2005). "Conspiracy claims must be pled with some degree of specificity and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012) (citation modified).

On appeal, Norman attempts to bolster her minimal allegations, for example, by arguing that the "City collaborated with the other sponsors of the [Plan], supplied information and targets

to the other collaborators, gave tax incentives," "met [with the defendants] on more than one occasion," and "prepared and supplied documents in concert." Appellant Br. at 28-29. But Norman cannot use her brief to amend her complaint. *Fisher v. Perron*, 30 F.4th 289, 300 (6th Cir. 2022). As a result, her conspiracy claims were properly dismissed.

## C.

Finally, Norman brings a state law extortion claim against the City. Having dismissed Norman's federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over her remaining state law claim. *Bah*, 610 F. App'x at 555 (citing 28 U.S.C. § 1367(c)(3)).

## IV.

Because Norman did not plausibly allege any of her claims, the district court did not err in dismissing Norman's complaint. Accordingly, we **AFFIRM**.