## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maimouna Thiam t/d/b/a      :
Rama Hair Braiding Salon,      :
                       Petitioner    :
                                  :
               v.              :    No. 301 C.D. 2022
                                  :    Argued:  April 3, 2023
Bureau of Professional and     :
Occupational Affairs, State      :
Board of Cosmetology,       :
                    Respondent   :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                **HONORABLE STACY WALLACE,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**     **FILED: July 25, 2023**

Maimouna Thiam t/d/b/a Rama Hair Braiding Salon (Petitioner or the Salon) petitions for review of the Final Adjudication and Order (Final Order) of the Bureau of Professional and Occupational Affairs (Bureau), State Board of Cosmetology (Board), issued on March 8, 2022, ordering Petitioner to cease and desist from the unlicensed practice of cosmetology including natural hair braiding and levying a civil penalty against Petitioner in the amount of $1,500.00.  On appeal, Petitioner argues that Section 5 of the statute commonly known as the Beauty Culture Law (the Law),[1] which requires a limited license to engage in the commercial practice of natural hair braiding, violates Petitioner's due process rights under article I, section 1

---

[1] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. § 511.

of the Pennsylvania Constitution, PA. CONST. art. I, § 1.[2] Following our review, we reverse.

## I. BACKGROUND

Petitioner, a single parent of six children, emigrated from Senegal to the United States in 1993. Although she is taking English classes, Petitioner speaks Wolof and French, and she reads very little English. (Findings of Fact (FOF) ¶¶ 5-6.)[3] When she was a teenager, Petitioner learned from her mother how to braid hair using a methodology requiring no chemicals or hot iron, only the use of her hands. (*Id.* ¶¶ 3, 7-8.) In 1993, Petitioner "earned a certificate in hairdressing and cosmetology from Wilfred Academy of Hair and Beauty Culture in New York," and she "obtained a license to practice as a hair braider in Florida" in 2014. (*Id.* ¶¶ 10-11.) Prior to 2011, Petitioner purchased the Salon in Philadelphia where she had worked as a natural hair braider for many years. (*Id.* ¶ 9.) In 2014, Petitioner attempted to complete the educational requirements for a cosmetology degree. (Petitioner's Answer to Order to Show Cause and Request for Hearing (Answer) ¶ 4, Certified Record (C.R.) Item 4.)[4] She enrolled in a 150-hour program at Divine, a cosmetology school in Philadelphia, but because the course was taught in English, Petitioner had difficulty understanding the instructors and had to use computer

---

[2] Article I, section 1 states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

[3] The Findings of Fact are set forth in the Proposed Adjudication and Order, which can be found as Item 15 in the Certified Record (C.R.). In its Final Order, the Board adopted the Findings of Fact set forth in the Proposed Adjudication and Order. (*See* Final Order at 1, C.R. Item 19.)

[4] The Reproduced Record consists of the Certified Record which is not properly paginated in accordance with Pennsylvania Rule of Appellate Procedure, Pa.R.A.P. 2173.

2

translation. (FOF ¶¶ 12-13.) Before withdrawing from Divine, Petitioner purchased materials and attended classes for two months, but she found the required courses were not relevant to her natural hair braiding practice. (Answer ¶ 5.) Petitioner did not complete the program or take the examination because she became ill, and the school closed before she could return. (FOF ¶ 14.) Due to a health condition, Petitioner is no longer able to braid hair herself or do other types of work, such as restaurant work. (*Id.* ¶ 15.)

Petitioner has never held a natural hair braiding license from the Board for herself or for the Salon, nor has she obtained any other authorization to practice a profession or occupation by the Board. (*Id.* ¶ 1.) Petitioner was not aware that she could obtain a limited license as a natural hair braider because the Board never explained this to her in its written communications or through its agents during the in-person inspections at the Salon. (Answer ¶ 6.) On December 11, 2017, while the Salon was open, an inspector for the Department of State (Department) conducting an inspection of the Salon "observed a female employee braiding the hair of a female customer for compensation." (FOF ¶ 2.) There was no evidence of any heat irons or chemicals on the premises. (*Id.* ¶ 3.) Petitioner was previously cited by the Board in 2011 and 2014 for maintaining the Salon without a license. (*Id.* ¶¶ 16-17.) However, neither the Board nor its agents have ever attempted to communicate with Petitioner about the charges filed against her in a language she could understand. (Answer ¶ 7.)

Based on the December 2017 inspection, the Board issued an order to show cause charging Petitioner with violating Section 2 of the Law, 63 P.S. § 508, by operating the Salon without a license. (FOF ¶ 18; Order to Show Cause ¶¶ 12-16, C.R. Item 1.) In her Answer, Petitioner admitted to all the factual allegations, and

argued, among other things, that she is otherwise qualified to engage in natural hair braiding but is unable to obtain a license due to a language barrier, that her practice does not threaten the public's health and safety as she does not wash hair or use any chemicals, and that closing her Salon would result in significant hardship. (Answer ¶¶ 1, 10, 12-13.) Petitioner also asserted several constitutional challenges including arguments that the Law violates her substantive and procedural due process rights and her equal protection rights. (*Id.* ¶¶ 12-14.)

A hearing was conducted before a Hearing Examiner on June 4, 2019, at which time Petitioner, represented by counsel, testified on her own behalf with the benefit of a French interpreter. (FOF ¶¶ 19-20.) Petitioner stated she had been braiding hair since she was 18 years old. (Notes of Testimony, Hearing, 6/4/19, (N.T.) at 23, C.R. Item 14.) Throughout the years she has worked at the Salon, Petitioner never received any complaints from customers about health, safety, hair loss, hygiene, or scalp issues. (*Id*. at 25.) When Petitioner was issued a citation on September 12, 2013, she could not understand what it meant without the assistance of counsel, and the person who cited her spoke to her in English. (*Id*. at 30-31.) She was told she would have to "refer to the court" regarding the citation. (*Id*. at 31.) Petitioner also needed a lawyer's assistance to understand the 2017 citation at issue herein. (*Id*. at 32.) No one explained to Petitioner the difference between a cosmetology license and a natural hair braiding license, and, in an effort to comply with licensing requirements for hair braiders, she enrolled in Divine in 2014. (*Id*. at 31, 33.) To attend Divine for a 150-hour course, Petitioner paid over $1,000.00 for a "recession fee" and recommended books, and an additional $25 each day, three days per week. (*Id*. at 33-34.) The courses at Divine were taught in English, and Petitioner could not finish the coursework due to an illness. (*Id.* at 34.) When she

4

was able to return, Divine had closed. (*Id*.) Petitioner would have returned to school if she had been able to find a school in the Philadelphia area that offered a course of study in natural hair braiding. (*Id*. at 35.)

Eric Edi,[5] a lecturer at Jefferson University and founding member and the chief operating officer (COO) of the Coalition of African Communities in Philadelphia (AFRICOM),[6] testified on behalf of Petitioner as follows. Dr. Edi is "[v]ery" familiar with immigrant women from West Africa, many of whom do not speak fluent English and are involved in the business of professional hair braiding. (*Id*. at 40-41.) Since about 2001, Dr. Edi has been involved with issues surrounding citations of natural hair braiders in the Philadelphia area in his capacity as COO of AFRICOM. (*Id*. at 42-43.) Dr. Edi was unaware of any programs in the Philadelphia area to accommodate the licensing requirements for natural hair braiders, although he personally knew of at least 20 women in search of such programs and had heard of others. (*Id*. at 43, 49.) Some women, who are confused about the requirements for cosmetology and natural hair braiding licensure, have spent about $3,000.00 to obtain a cosmetology license, though the course of study offered them no training for natural hair braiding. (*Id*. at 44-45, 47-48.) For Petitioner and others similarly situated, a language barrier and computer illiteracy create problems in passing the required examination for licensure. (*Id*. at 45-46.) Dr. Edi was aware of efforts to open a specialty school for hair braiding in the Philadelphia area four to five years prior to the hearing, which would have enabled hair braiders to become compliant with licensure requirements and allow them to train others in the craft. (*Id*. at 48-

---

[5] Eric Edi initially was referred to as "Dr. Eric Edi," (N.T. at 28), but throughout his testimony counsel addressed him as "Mr. Edi." We will use the former designation.

[6] Dr. Edi explained AFRICOM "is a coalition of community based on the mission that [it] created in 2001 to serve, advocate for African and Caribbean immigrants in Philadelphia and now in the State of Pennsylvania." (N.T. at 40.)

49.)  Dr. Edi was familiar with former Governor Tom Wolf's Commission on Licensing Reform (the Commission) wherein former Governor Wolf called for the total abolishment of the natural hair braiding licensing requirement.  (*Id*. at 49-50.)[7]

Following the hearing, Hearing Examiner issued a Proposed Adjudication and Order (Proposed Order) on June 28, 2019, including the findings of fact set forth above.  Hearing Examiner concluded that Petitioner violated Section 2 of the Law "by maintaining a place for the practice of natural hair braiding for compensation without being licensed to do so." (Proposed Order (Prop. Order), Conclusion of Law (COL) ¶ 3, C.R. Item 15.)  Hearing Examiner rejected Petitioner's argument that she cannot obtain a license, explaining this "is not an appropriate ground to waive" the licensing requirement and noted Petitioner has never attempted to obtain a license. (*Id*. at 7.)  Despite finding that illness prevented Petitioner from completing the 150-hour course at Divine before the school's closure in 2014, (FOF ¶¶ 12, 14), Hearing Examiner stated that when natural hair braiding was first added to the Law, Petitioner could have obtained a license by demonstrating she had three years of consecutive experience and completed a 150-hour program within two years of initial licensure, but she did not do so.  (*Id.* at 7 n. 5).  Hearing Examiner did not opine as to whether there was sufficient record evidence that the Board would have been "satisfied with the standards provided for licensure" in either New York or Florida as required by Section 9 of the Law, 63 P.S. § 515, which provides for

---

[7] Petitioner asked Hearing Examiner to take judicial notice of the Commission and of its recommendation, and Hearing Examiner did so.  Petitioner also offered the Commonwealth's Bureau of Professional and Occupational License Affairs June 11, 2018, report (Bureau Report), along with former Governor Wolf's proposal from his website as exhibits.  Those documents were admitted into evidence without objection as Respondent's Exhibit 3.  (N.T. at 50-51; *see* Exhibit (Ex.) R-3 "Review of State Professional and Occupational Licensure Board Requirements and Processes By direction of [former] Governor Tom Wolf" (Review), Supplemental Record filed May 5, 2023.)

6

reciprocity. (*Id.* at 7-8.) Notwithstanding, Hearing Examiner found there was no requirement that Petitioner complete a program in Pennsylvania, Petitioner never attempted to pass the required examination based on her training in New York or sought reciprocity based on her Florida permit, and she never had a licensed employee oversee the Salon for her. (*Id.* at 7-8.) Hearing Examiner acknowledged there have been proposals to eliminate the licensing requirement for natural hair braiding, but such law had not yet been enacted. (*Id.* at 8.) Hearing Examiner also acknowledged Petitioner's constitutional arguments but explained those were beyond Hearing Examiner's and the Board's review. (*Id.*) Hearing Examiner recommended that Petitioner pay a civil penalty of $1,500.00 and that she cease and desist from the unlicensed practice of cosmetology. (*Id.* at 10.) In recommending these sanctions, Hearing Examiner noted that Petitioner had received two prior citations for maintaining an unlicensed salon and that she was issued a fine for both citations. (*Id.*)

On July 1, 2019, the Board filed its Notice of Intent to Review pursuant to Section 35.226(a)(2) of the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 35.226(a)(2). (C.R. Item 16.) Petitioner filed Exceptions with the Board on July 31, 2019, wherein she again asserted constitutional challenges and argued that the penalties recommended by Hearing Examiner were unduly harsh. (*Id.* at Item 18.) The Institute for Justice (IJ), which describes itself as "a nonprofit, public-interest law firm dedicated to defending Americans' rights to private property, economic liberty, free speech and educational choice[,]" also filed a letter in support of Petitioner's Exceptions. (C.R. Item 17.) It argued that occupational licensing laws intended to protect the public "have gone too far and are, in too many instances, denying Americans the opportunity to earn an honest living without any

7

benefit to consumers" and that "[o]ne of the most dramatic examples of excessive licensing involves natural hair braiding." (IJ Letter at 1.) As a result of IJ's efforts, at least 28 states currently "do not require natural hair braiders to obtain a license to practice their craft," which derives from "a rich cultural heritage spanning millennia." (*Id*.) According to IJ, among the states that do not require licensure for natural hair braiders are the Commonwealth's neighbors, Delaware, Maryland, and West Virginia, as well as Vermont, California, Arizona, and Texas. (*Id*. at 1-2.) IJ contended that even states that do require a license to braid hair do not have requirements as onerous as Pennsylvania's. According to IJ, "[t]hese states (and their hours requirements) are: Oregon (online module), Missouri (4-6 hour video), South Carolina (6 hours), Florida (16 hours), Tennessee (16 hours), Alaska (35 hours), New Jersey (40-50 hours), District of Columbia (100 hours), Alabama (210 hours), and Nevada (250 hours)." (*Id*. at 3 n.3.)

On March 8, 2022, the Board issued its Final Order rejecting Petitioner's Exceptions and adopting Hearing Examiner's Proposed Order in its entirety, including the Findings of Fact, Conclusions of Law, discussion, and recommended sanctions. (Final Order at 1.) The Board also added discussion in response to the Petitioner's Exceptions. First, the Board stated it did not have the authority to find the Law and its regulations violate Petitioner's substantive due process rights. (*Id.* at 2.) However, the Board explained that Petitioner had not been charged personally and, as the owner of the Salon, she had the ability to designate a properly licensed cosmetologist or natural hair braider to manage the Salon. (*Id*. at 2-3.) The Board likewise found no violation of Petitioner's right to procedural due process because she had "received reasonable notice of the charges against her and" had been given the "opportunity to be heard in accordance with [Section 504 of the Administrative

8

Agency Law, 2 Pa.C.S. § 504].["8"] (*Id.* at 3.)  To the extent Petitioner claimed she did not understand the notice, the Board explained the notice states an interpreter may be requested, which Petitioner's counsel did request.  (*Id.*)  The Board also noted that Petitioner had been issued two prior citations for the same offense.  (*Id.*)

Next, the Board rejected Petitioner's claim that the Law denies her equal protection because the limited licensing requirement cannot be completed by non-English speakers and fails to recognize hair braiding licenses from other states.  (*Id.* at 3-4.)  The Board again noted it could not consider a constitutional issue but nonetheless explained that "there is no evidence that [Petitioner] has made any application to the Board, or that the Board has denied any applications for licensure.  The Board cannot discriminate against an applicant that has not ever sought any license."  (*Id.* at 4.)  Finally, the Board determined the cease and desist order is not unduly harsh, for the operation of an unlicensed salon is illegal irrespective of the financial situation of its operator.  (*Id.*)  Viewing itself as having "a vested interest in deterring" all individuals from operating a cosmetology or a natural hair braiding salon without a license to protect the health and safety of citizens of Pennsylvania, the Board found it appropriate to levy the civil penalty recommended by Hearing Examiner against Petitioner in the amount of $1,500.00.  (*Id.* at 5.)  Petitioner subsequently petitioned this Court for review of the Final Order.["9"]

---

[8] Section 504 states:  "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.  All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings."  2 Pa.C.S. § 504.

[9] A day after filing the petition for review, Petitioner filed an "Application to Stay Administrative Agency Order Pending Determination on Petition for Review and for Expedited Consideration of the Motion," which this Court granted following argument.  *See Thiam t/d/b/a Rama Hair Braiding Salon v. Bureau of Pro. And Occupation Affairs, State Bd. of Cosmetology* (Pa.  Cmwlth., No. 301 C.D. 2022, filed May 5, 2022) (Cohn Jubelirer, J. single-judge op.)

9

## II.    PARTIES' ARGUMENTS

Petitioner presents a single claim for this Court's review:  Whether the Law's licensing provisions for natural hair braiders violate Petitioner's due process rights. Petitioner argues that "[a]rticle I, [s]ection 1 of the Pennsylvania Constitution protects an individual's right to pursue a career or occupation," and her "livelihood as a natural hair braider is threatened by the [Board]'s order to shut down her" Salon, which is the "sole source of income for her family[,] due to her lack of a license." (Petitioner's Brief (Br.) at 10.)  Petitioner posits that as she uses no chemicals, dyes, or sharp instruments in the Salon, the limited licensing regime requiring Petitioner to obtain an onerous 300 hours of expensive schooling and pass an examination in English is not rationally related to the minimal health and safety risks posed by natural hair braiding, particularly given her experience and what natural hair braiding entails.  (*Id*. at 10-11.)  Petitioner further maintains the current licensing scheme for natural hair braiders "adversely impacts African immigrant women" like her and their "African American . . . clientele seeking a safe and natural alternative to" other procedures that utilize dangerous chemicals.  (*Id*.)

Relying upon the Pennsylvania Supreme Court's decision in *Ladd v. Real Estate Commission*, 230 A.3d 1096 (Pa. 2020) (*Ladd II*),[10] and the heightened rational basis test articulated in *Gambone v. Commonwealth*, 101 A.2d 634 (Pa. 1954), Petitioner argues a limited licensing scheme like the one at issue herein "must have a real and substantial relationship to a legitimate government end[] and not impose burdens . . . that are unduly oppressive or patently unnecessary," and the Law, as applied to her, is unduly burdensome notwithstanding the alleged state interest involved. (Petitioner's Br. at 13-14.)  First, Petitioner contends there are

---

[10] *Ladd II* reversed and remanded this Court's previous decision in *Ladd v. Real Estate Commission*, 187 A.3d 1070 (Pa. Cmwlth. 2018).

10

neither identified health or safety risks involved with natural hair braiding nor any evidence of complaints against the Salon or Petitioner. (*Id.* at 15.) Petitioner also references published statistics that indicate complaints pertaining to natural hair braiding are infrequent. (*Id.* at 15-16.) According to Petitioner, 32 states have no licensing requirements for natural hair braiders, and since 2017, the Commonwealth has taken steps to eliminate the requirement. (*Id.* at 17-19). For example, Petitioner's counsel asked Hearing Examiner to take judicial notice of the Governor's Commission on Licensing Reform from the Governor's website. (N.T. at 49- 50, Ex. R-3.) By way of a 2017 Executive Order, former Governor Wolf directed the Bureau to conduct a comprehensive review of licensing requirements in the Commonwealth. (Petitioner's Br. at 17.) On June 11, 2018, the Bureau issued the Bureau Report that found overburdensome licensing requirements can be particularly harmful to immigrant communities and observed that only 3 of Pennsylvania's 13 regional comparison states impose licensure requirements on natural hair braiders. (*Id.* at 17-18.)

Petitioner next maintains that the Law's current requirement for 300 hours of study to be followed by a written examination does not bear a real and substantial relationship to a government interest with regard to an experienced natural hair braider's ability to perform hair braiding services. (*Id.* at 19.) Petitioner discusses decisions in other jurisdictions wherein courts have examined what Petitioner deems to be similar natural hair braiding licensing regimes and determined that they do not have a real and substantial relation to a government interest. (*Id.* at 19-21, 25-26.)

Petitioner urges that even if this Court were to find the existence of a real and substantial relationship between the Law and the Commonwealth's concern with health and safety, Petitioner has "show[n] that the licensing requirements under the

11

Law and regulations are overly onerous and oppressive." (*Id.* at 22.) This is especially so in light of the fact that courses of study to meet the licensing requirements are not readily available in Pennsylvania unless one were to enroll in a 1,250-hour cosmetology program, which would be taught in English, making it difficult for Petitioner to learn and would require Petitioner and others similarly situated to learn unnecessary skills. (*Id*. at 23-24, 26-28.) Petitioner points out that emergency medical technicians (EMTs) need only pass a competency exam without any required coursework, and tattoo artists are **not required** to obtain **any** occupational licenses in the Commonwealth. (*Id.* at 23.) Petitioner did travel to Florida where she obtained a hair braiding certificate, which she displayed in the Salon when she returned to Philadelphia. (*Id*. at 24-25.)

In response to the Board's assertion that Petitioner's due process claim fails as she could employ a licensed individual to manage the Salon, Petitioner argues her due process rights are still implicated because the pool of licensed salon managers would be "miniscule" due to the difficulty in obtaining a hair braiding license. (*Id.* at 26.) Citing to a filing by the Board with the Independent Regulatory Review Commission (IRRC), Petitioner asserts there are only 54 licensed natural hair braiders in the Commonwealth and 3 hair braiding teachers. (*Id.* at 27.)

The Board argues that "a law passed by the [G]eneral [A]ssembly is presumed to be constitutional," and a review of the Law reveals that its limited licensing requirements for natural hair braiders have not impinged Petitioner's substantive due process rights to pursue her chosen occupation. (Board's Br. at 9-10.) The Board points out that following the Supreme Court's remand in *Ladd II*, this Court, in a single-judge opinion, held the Real Estate Licensing and Registration Act's

12

(RELRA),[11] broker licensure requirements of hundreds of hours of real estate coursework[,]" plus a three-year apprenticeship and an examination were "minimally related, at best," to the petitioner's "short-term property management services" business and "[s]hould the General Assembly believe this type of activity needs to be regulated, it may consider establishing less rigorous requirements as it did for other professions falling under RELRA, like time-share salespersons." (Board's Br. at 12-13 (quoting *Ladd v. Real Est. Comm'n* (Pa. Cmwlth., No. 321 M.D. 2017, filed Oct. 31, 2022), slip op. at 33-34 n.34 (Wallace, J. single-judge opinion) (*Ladd III*).)[12]  The Board reasons that the natural hair braiding limited license is just the type of modified law that this Court referenced in *Ladd III* for requiring 300 training hours in anatomy, scalp care, natural hair braiding, and sanitation, "directly relate[s] to ensuring that the practice of natural hair braiding is done in a manner which promotes public health and safety," and is narrowly tailored to that practice. (Board's Br. at 14, 16.)  The Board also finds instructive a decision of the Sixth Circuit, *Bah v. Attorney General of Tennessee*, 610 F. App'x 547 (6th Cir. 2015), and distinguishes those decisions of other jurisdictions upon which Petitioner relies in her brief in support of her arguments. (*Id*. at 14-16.)

The Board next argues Petitioner's assertion that the requirements of the Law are unduly burdensome because the 300-hour program is difficult to find in the Commonwealth is not supported by the record.  The Board states Dr. Edi's testimony was not supported by any documentation but, rather, was based on accounts he stated he had heard from members of the community.  (*Id*. at 17.)  Although the Board

---

[11] Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§ 455.101-455.902.

[12] A single-judge opinion of this Court, while not binding, may be cited for its persuasive value pursuant to Rule 126(c)(2) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(c)(2).

failed to lodge any objection to Petitioner's testimony at the time of the hearing before Hearing Examiner, the Board describes her testimony as "confusing" in that it does not "establish that she was even personally aware of or that she made any effort to locate any cosmetology schools that would offer a natural hair braiding curriculum once she returned to Pennsylvania from Florida." (Board's Br. at 18 (citing N.T. at 35-36).) The Board asserts this Court cannot consider the filing by the IRRC referenced in Petitioner's brief as it was made "in support of a fee increase regulation promulgated by the Board unrelated to this case" and was not made a part of the certified record herein. (*Id*. at 18.) Notwithstanding, the Board posits it is impossible from the IRRC filing to determine how many of the 158 licensed cosmetology schools referenced therein offer a curriculum in natural hair braiding and that the document, which shows there "are 77,854 licensed cosmetologists compared to 54 licensed natural hair braiders," seemingly undercuts Petitioner's point that the 300 hours required under the Law "is unduly burdensome when 77,854 individuals" completed "the 1,250 hours required for a full cosmetologist license." (*Id.* at 19.) The Board also explains that Petitioner was not personally issued a civil penalty for performing natural hair braiding without a license but, rather, she was cited for permitting another unlicensed individual to work in her Salon. According to the Board, nothing in the Law or its regulations requires Petitioner as the owner of the Salon to also be a limited license holder, so long as her employees are licensed; yet Petitioner presented no testimony in this regard or to support her allegations that the cost to obtain the limited license is prohibitive. (*Id*. at 20-21.)

Next, the Board argues that while Petitioner may have training and experience in natural hair braiding, her skills do not override the Commonwealth's interest in ensuring that Petitioner can practice that profession in a way that conforms with the

14

Legislature's desire to protect the health and safety of the consumers; therefore, the limited licensing requirements under the Law are rationally related to its stated purpose. (*Id.* at 22.) The Board reasons that Petitioner's arguments pertaining to other states' regulation of natural hair braiding do little to advance her as-applied substantive due process challenge because such arguments fail to show either that Pennsylvania's regulation of the procedure is "unreasonable, unduly oppressive, or patently beyond the necessities of the case" or that the Law does not have a real and substantial relation to the public interest it seeks to advance when applied to the facts herein. (*Id*. at 24-25.) The same holds true for Petitioner's contention that she has never had complaints about her services or the Salon, for this fact does not eliminate the General Assembly's right to regulate her occupation. Finally, the Board urges this Court not to give weight "to bald assertions" Petitioner makes in her brief to articles, including a report by the IJ purporting that there are no safety risks associated with natural hair braiding and public comments by former Governor Wolf that the natural hair braiding license should be removed, because those documents/statements are not contained in the record, nor were they presented before Hearing Examiner. (*Id*. at 24-25.)[13] The Board finds no relevance to Petitioner's argument that because she has never been the subject of a health and safety complaint, she poses no public safety risk and likens such a claim to a health practitioner who has never had a complaint filed against him or her feeling no need to submit for a licensure renewal. (*Id*. at 26.)

---

[13] These allegations are incorrect for numerous reasons as previously discussed. First, in her Answer, Petitioner did allege that former Governor Wolf proposed eliminating the licensing requirements. (*See* Answer ¶ 11.) In addition, the Commission's recommendation prepared in response to former Governor Wolf's proposal was admitted as Exhibit R-3, without objection from the Board, at the Hearing. (*See* N.T. at 50-51.) Also, Dr. Edi testified regarding former Governor Wolf's efforts in this regard at the hearing. (*Id.* at 49-50.)

## III. DISCUSSION

### A. *General Legal Principles*

This Court's standard of review from a final order by the Board is "**whether constitutional rights were violated**, [whether] an error of law [was] committed, or whether the findings of fact are supported by substantial evidence of record." *Diwara v. State Bd. of Cosmetology*, 852 A.2d 1279, 1282 n.4 (Pa. Cmwlth. 2004) (emphasis added).

The Pennsylvania Supreme Court has held that

> every citizen has an inalienable right to engage in lawful employment. While a state may regulate a business which affects the public health, safety, and welfare, it may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected.

*Sec'y of Revenue v. John's Vending Corp.*, 309 A.2d 358, 361 (Pa. 1973) (citing *Dent v. West Virginia*, 129 U.S. 114, 121-22 (1889); *Moore v. Jamieson*, 306 A.2d 283, 308 (Pa. 1973)).

In *Diwara*, this Court held that the process of natural hair braiding is encompassed within the Law's definition of cosmetology, and beauty salon owners had failed to establish a licensure requirement for braiding hair violated their substantive due process and equal protection rights under both the United States and Pennsylvania Constitutions. *Id.* at 1285-86. In 2006, the General Assembly amended the Law to expressly include natural hair braiding and created a limited licensure requirement for natural hair braiding. *See* Section 2 of the Act of July 7, 2006, P.L. 704, No. 99. "Natural hair braiding" is defined by the Law as

> the practice of utilizing techniques that result in tension on hair roots of individuals, such as twisting, wrapping, weaving, extending, locking or braiding of the hair. **The term does not include the application of**

16

**dyes, reactive chemicals or other preparations to alter the color or to straighten, curl or alter the structure of hair**.

Section 1 of the Law, 63 P.S. § 507 (emphasis added).

Section 5(b)(3)(i) of the Law provides, in relevant part, that

[t]he [B]oard shall issue the following limited licenses to qualified applicants:

. . . .

Natural hair braiding license, which shall authorize the holder to engage in the practice of natural hair braiding only. An applicant for a natural hair braiding license shall have completed **three hundred hours of [B]oard-approved subjects relating to sanitation, scalp care, anatomy and natural hair braiding in a cosmetology school and passed an examination limited to that practice**. Licensed natural hair braiders may operate a salon limited to that license. An applicant may be permitted to take a written examination upon completion of at least two hundred fifty hours of instruction in natural hair braiding in a licensed school of cosmetology. The examination shall include both theoretical and procedural skill questions as prescribed by the [B]oard. Any applicant may apply and is eligible for licensure upon (A) passing the written examination, (B) completion of the required three hundred hours of [B]oard-approved subjects, and (C) certification by a duly licensed school of satisfactory completion of all program requirements.

63 P.S. § 511(b)(3)(i) (emphasis added).

Section 2(2) of the Law provides it is "unlawful for any person to practice or maintain any place for the practice of . . . natural hair braiding . . . for compensation without" at least a limited license. 63 P.S. § 508(2). According to the Board's regulations, either a licensed natural hair braider or a licensed cosmetologist may apply for a natural hair braiding salon license, and the owner or designated person in charge must be present to manage the salon and oversee the braiding service,

17

which must be performed by licensed hair braiders during regular business hours. 49 Pa. Code §§ 7.51, 7.62(b)(3), (d).

The regulations also provide alternatives to limited licensure. For instance, for a limited time following enactment, a person could have applied for a license based on experience. Specifically, Section 7.31(c) of the regulations states:

> (c) Until January 11, 2010, the Board will issue a natural hair braider license to an applicant who does the following:
>
> (1) Submits the application adopted by the Board.
>
> (2) Pays the required licensing fee in [Section] 7.2 (relating to fees).
>
> (3) Provides proof that the applicant has practiced natural hair braiding for [three] consecutive years immediately prior to the date of the application for licensure.
>
>> (i) Proof of practice requires that the applicant provide tax records of employment and an affidavit from the applicant and the applicant's immediate supervisor, where applicable, verifying the applicant's practice of natural hair braiding for [three] consecutive years immediately prior to the date of the licensure application.
>>
>> (ii) The Board will accept the information provided and will impose no penalty upon the applicant for failure to comply with the licensing provisions in [S]ection 2 of [Law] . . . that the applicant committed prior to September 5, 2006 . . . .

49 Pa. Code § 7.31(c).[14]

---

[14] Notably, this regulation makes no mention of an applicant's need to complete a course of 150 hours as found by Hearing Examiner. (Proposed Order at 7 n.5.). Also, this option was not available to Petitioner in 2017 at the time she was issued the citation which gave rise to the instant appeal.

The Law and the regulations also provide for reciprocity. In this regard, Section 7.31(b) of the regulations states "[a]n individual who meets the criteria for licensure by reciprocity under [S]ection 9 of the [Law] . . . may obtain a license without examination." 49 Pa. Code § 7.31(b). In addition, Section 9 of the Law reads:

> Any person who has practiced or taught cosmetology under a certificate, license or permit, for not less than two years in another state, territory, or the District of Columbia, may secure the license required by this [Law] without an examination or compliance with other requirements as to age or education: Provided, [t]hat the Board shall be satisfied that the standards provided for licensure under the laws of the place wherein the applicant's license was issued are the same or substantially the same as those provided for hereunder, that similar privileges are accorded persons licensed under the laws of the Commonwealth, that the applicant holds a valid license from the place wherein he is entitled to practice, and that all the terms and conditions prescribed by the Board are complied with by the applicant. Such application shall be accompanied by an affidavit of a licensed physician that the applicant was examined and is free from all contagious and infectious diseases, and the license fee required by this [Law]. Students, upon graduating from licensed schools of cosmetology, may apply for, and receive from the [D]epartment, a temporary license to practice in the field of cosmetology until the next regular examination held by the [D]epartment under the provisions of this [Law].

63 P.S. § 515.

Petitioner presents an as-applied constitutional challenge to the Law herein. This Court has explained the two types of constitutional challenges, facial and as-applied, as follows:

> A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person

19

under particular circumstances deprived that person of a constitutional right.

*Peake v. Commonwealth*, 132 A.3d 506, 516-17 (Pa. Cmwlth. 2015) (citations omitted). "[A]n as-applied challenge will not necessarily invalidate a law given that a law 'may operate in an unconstitutional way as to one particular individual or company, as to which it may be declared void, and yet may, as to others still be effective.'" *Nigro v. City of Philadelphia*, 174 A.3d 693, 700 (Pa. Cmwlth. 2017) (quoting *Pa. R. Co. v. Driscoll*, 9 A.2d 621, 632 (Pa. 1939)).

In support of her argument that the Law as applied to her is unduly burdensome, Petitioner relies in part upon *Ladd II*, wherein the Pennsylvania Supreme Court held that, as "a matter of first impression, a short-term vacation rental manager raised a colorable claim" that the broker licensing requirements codified in the RELRA "were unconstitutional as applied to her services," and the Court's application therein of the heightened rational basis test first articulated in *Gambone*. *Id*. at 1096, 1115.

The *Gambone* rational basis test provides:

> [A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.

101 A.2d at 637. In *Nixon v. Commonwealth*, our Supreme Court stated that to determine whether one's substantive due process rights have been violated, a court must undertake a two-step analysis to determine 1) whether the licensing requirements are "unreasonable, unduly oppressive, or patently beyond the

20

necessities of the case and" 2) whether those requirements bear "a real and substantial relation to the objects sought to be obtained," when applied to the individual under the circumstances presented in the case. 839 A.2d 277, 287 (Pa. 2003).

Recently, this Court in *Ladd III* applied the *Gambone* test in relation to the real estate broker licensing requirements in RELRA – apprenticeship, instructional coursework, examinations, and a brick-and-mortar location. *Ladd III*, slip op. at 28. The Court recognized the RELRA sought to advance the public interest of protecting citizens from the fraudulent conduct of individuals engaged in the business of the real estate trade. *Id.* The Court further found that some statements of the Supreme Court in *Ladd II* remained true. For example, the Court observed that those "who manage and facilitate rentals of lodging in apartment complexes and duplexes on behalf of owners are completely exempt from the statute's broker licensing requirements," and individuals "who manage and facilitate rentals in hotels do not fall under the terms of [the] RELRA at all." *Id.* at 33 (quoting *Ladd II*, 230 A.3d at 1114). The Court found the petitioner's "business model [was] more closely analogous to services provided by the[] exempt individuals than to those of a broker, despite the fact that the statutory definition of 'broker' technically catches [the petitioner] in its net." *Id.* (quoting *Ladd II*, 230 A.3d at 1114) (alterations added). The Court ultimately held:

> [The] RELRA's broker licensure requirements of hundreds of hours of real estate coursework, a three-year apprenticeship, and the broker examination are all minimally related, at best, to [the petitioner]'s short-term property management services. [The] RELRA's requirements are well beyond the necessities of this case. Forcing [the petitioner] to comply with [the] RELRA's requirements in no way advances the General Assembly's goal of public protection. As a result, this Court concludes that, as applied to [the petitioner]'s short-term property

21

management services, [the] RELRA's licensure requirements do not bear a real and substantial relation to the statutory goal of protecting "the public from abuse by those who are engaged in the business of trading real estate."

*Ladd III*, slip op. at 33-34 (quoting *Ladd II*, 230 A.3d at 1106) (alterations added).

This Court also recently considered a facial constitutional challenge to the Law in *Diop v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 272 A.3d 548 (Pa. Cmwlth. 2022), which was brought in the Court's original jurisdiction. Specifically, the petitioners in *Diop* brought facial and as-applied substantive due process challenges and facial and as-applied equal protection challenges to the Law's limited licensing requirements. They argued that as skilled natural hair braiders who have spent many years honing their craft, they should not have to pay high tuition costs or suffer a loss of income to earn a license which would require them to learn techniques that they have previously "mastered or skills that do not relate to natural hair braiding." *Id.* at 557. The petitioners also argued the Law and its associated regulations deprived them and other natural hair braiders of the ability to pursue their calling and prevented them from maintaining or expanding their businesses because they could not find qualified, licensed braiders to meet their clientele's demand. As a result, the petitioners raised a facial challenge to the Law's limited licensing requirements for natural hair braiders and contended that the Law's requirements, as applied to them, also violated their substantive due process rights as guaranteed in article I, section 1 of the Pennsylvania Constitution. The *Diop* petitioners asserted that the Law's licensing requirements for natural hair braiders bore "no substantial relationship to the protection of public health, safety, welfare, or any other legitimate government interest," and, instead, "serve[d] only illegitimate economic protectionism." *Id.* at 558. Also, in support of their claim that

the Law's licensing requirements for natural hair braiders violated the equal protection guarantee in article I, section 26 of the Pennsylvania Constitution, PA. CONST. art. I, § 26,[15] both facially and as applied to them, the petitioners further argued "that the Law treats similarly situated persons differently by allowing licensed cosmetologists, who lack any training in natural hair braiding, to provide the service, while denying experienced, but unlicensed, natural hair braiders the same right." *Diop*, 272 A.3d at 558.

The Bureau and Board filed preliminary objections challenging the legal sufficiency of the petitioners' claims.[16] In ruling on the preliminary objections, this Court first acknowledged that "[l]egislation enacted by the General Assembly enjoys a presumption of constitutionality," and a statute will be declared unconstitutional only where "it clearly, palpably, and plainly violates the Constitution." *Id.* at 563 (quoting *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019)). Noting that for substantive due process rights to attach, an individual must have been deprived of a constitutionally protected interest or property right and one's right to engage in a licensed profession is not a fundamental right, we applied the *Gambone* test to the petitioners' substantive due process challenge and found the Law, on its face, was not unconstitutional. *Diop*, 272 A.3d at 563-64. In doing so, we observed

> the legitimacy of the state purpose is undisputed. The title of the Law, as amended, is "[t]o promote the public health and safety by providing for examination, licensing and granting of permits for those who desire to engage in the profession of cosmetology[.]" Act of July 7, 2006, P.L.

---

[15] Stating "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, § 26.

[16] Preliminary objections also were filed challenging standing and failure to join indispensable parties, neither of which is at issue here.

23

704, No. 99, § 1. Our Supreme Court has also observed that the Law and its counterpart commonly referred to as the Barber License Law[, Act of June 19, 1931, P.L. 589, *as amended*, 63 P.S. §§ 551-567,] "have but one purpose, and that is the protection of patrons of barber and beauty shops." *Dep['']t of Licenses [&] Inspections, B[]d[.] of License Inspection [&] Rev[.] v. Weber*, . . . 147 A.2d 326, 328 ([Pa.] 1959). Thus, we consider whether the licensing requirements for natural hair braiders bear a rational, *i.e.*, "real and substantial," relationship to the health and safety of hair salon patrons.

We agree with [the r]espondents that [the p]etitioners have not demonstrated that the Law, on its face, clearly violates the Pennsylvania Constitution. Prior to 2006, one seeking to practice natural hair braiding was required to obtain a cosmetology license with 1,250 hours of instruction. In 2006, the General Assembly created a limited license tailored to the practice of natural hair braiding; currently, an applicant is required to pass a written examination and complete only 300 hours of Board-approved instruction in professional practices, including sanitation; sciences, including scalp care and anatomy; and cognitive and manipulative skills related to natural hair braiding. . . . 63 P.S. § 511(b)(3)(i); 49 Pa. Code § 7.129(f). Ensuring that individuals who offer natural hair braiding services to the public have basic knowledge of sanitation, scalp care and anatomy is reasonably related to protecting the safety and health of patrons of hair salons. These licensing requirements, and the requirement that licensees have training in the cognitive and manipulative skills related to their chosen profession, are not "unreasonable, unduly oppressive or patently beyond the necessities of the case[.]" *Gambone*, 101 A.2d at 637.

*Id.* at 564–65 (first, second, and last alteration in original).[17] Accordingly, we sustained the preliminary objection to the facial substantive due process challenge. *Id.* at 565. However, and important herein, we held the petitioners' substantive due

---

[17] With regard to the petitioners' facial and as-applied equal protection challenges, this Court observed that "licensed cosmetologists, unlike [the p]etitioners and other unlicensed natural hair braiders, must receive substantial instruction in various cosmetology skills, including skills related to natural hair braiding. The two groups are not similarly situated and, thus, [the p]etitioners' equal protection claims must fail." *Diop*, 272 A.3d at 566.

24

process claim, as applied to them, would continue and directed the respondents to file an answer.[18]

### B.     Application of the Gambone Test

Mindful of the aforementioned statutory authority and caselaw, we consider the *Gambone* factors as explicated in *Nixon* as to whether the Law's requirement for Petitioner, who has practiced the art of natural hair braiding for most of her life and who does not utilize any chemicals or hot irons, to enroll in and finance a course for 300 hours of training and pass an examination in English, is "unreasonable, unduly oppressive, [and] patently beyond the necessities of the case" as applied to her. *Nixon,* 839 A.2d at 287; *Gambone*, 101 A.2d at 637.  The United States Supreme Court has long held that the government may not arbitrarily interfere with one's fundamental right "to follow any lawful calling, business, or profession [she] may choose[.]" *Dent*, 129 U.S. at 121.  This is because the denial of a license to practice one's profession can deprive her of that liberty interest if the reasons for the denial offend due process.  *Id.*  However, when ruling on the constitutionality of professional licensing requirements for physicians in *Dent*, the United States Supreme Court cautioned that occupational licensure is not without constitutional limits.  Government is free to mandate requirements "appropriate to the calling or profession," but not those that "have no relation to such calling or profession" because that would "deprive one of [her] right to pursue a lawful vocation." *Id*. at 122.  The *Dent* case continues to be cited nationally and in Pennsylvania for the proposition that licensing restrictions must have a reasonable connection to an

---

[18] The respondents filed an answer and new matter, to which the petitioners have replied. There has been no docketed activity in *Diop* since the filing of the reply to new matter on April 6, 2022.

25

applicant's fitness or capacity to perform the required work. *See, e.g., United States of America v. Hopkins,* 927 F. Supp. 2d 1120 (D.N.M. 2013); *Tandon v. State Bd. of Med.,* 705 A.2d 1338, 1347-48 (Pa. Cmwlth. 1997).

Petitioner has presented sufficient evidence that the Law's requirements as applied to her are unreasonable, the first prong of the *Gambone* test. Petitioner has been a natural hair braider since she was a teenager, and this is the only profession she has ever known. (N.T. at 23-24.) It is likely that Petitioner, who has practiced her craft for most of her life, would have as much, if not more, skill in the art of natural hair braiding than the instructors under whose tutelage the Law currently requires her spend hundreds of hours and to whom she must pay thousands of dollars to obtain a license. For this reason, much of the time and money Petitioner is required to spend taking courses to teach her skills she already knows, if she is fortunate enough to find a course specific to natural hair braiding, or skills entirely unrelated to natural hair braiding, if she is forced to take a broader cosmetology course, is unnecessary. Computer literacy also complicates learning for Petitioner. (N.T. at 45-46.) This is compounded by the fact that the classes are taught in English, in which Petitioner is not fluent. (N.T. at 34.)

Petitioner also has established the Law as applied to her is unduly oppressive, another factor in the first prong of the *Gambone* test, in that without a license her livelihood will be erased, and she has no other financial resources upon which to rely if the Salon is forced to close. (N.T. at 36.) Both Petitioner and Dr. Edi, the latter of whom the Hearing Examiner described as "a witness with expertise in the culture of the community engaged in natural hair braiding and the availability of formal training," (Prop. Order at 2), spoke to the unavailability and cost-prohibitive nature of schooling for natural hair braiders, (N.T. at 34-35, 43-45, 48-49). For this

reason, although Petitioner has not been prohibited from operating the Salon so long as she employs licensed natural hair braiders, finding natural hair braiders to operate and work in the Salon is hampered by the same lack of training facilities and language barriers applicable to her.[19] Three hundred hours of education followed by an examination in English is also beyond necessity for Petitioner, who has been braiding hair for years and has never had any complaints about the Salon or the manner in which she braids hair. (N.T. at 25.)

The Bureau Report is relevant to Petitioner's due process claim and supports her repeated suggestion that the limited licensing requirements under the Law unduly burden her because there are few schools in Pennsylvania and no schools in the Philadelphia area that offer the necessary 300-hour natural hair braiding program. (Petitioner's Br. at 11, 19, 23, 27.) As the Bureau Report makes evident, any concerns the Bureau may have for patrons of natural hair braiding services can be addressed with less stringent licensing requirements. Former Governor Wolf's Executive Order 2017-03 led to the creation of a Commission on Licensing Reform, which

> directed the commissioner of [the Bureau] to work with each board and commission to undertake a critical and comprehensive review of the following for each profession licensed:
>
> • The number of regional states that require the same or equivalent license as Pennsylvania;
> • Processes, licensing and renewal fees, training, and continuing education requirements;
> • Whether the above referenced requirements and fees are set in statute, regulation, or policy; and

---

[19] At the time of the hearing, Petitioner explained she had a health issue related to her hands that have become distorted due to her years of braiding hair. (N.T. at 36.)

27

> • Any automatic criminal history bans, specifying the crime or conviction trigger and the length of the licensure ban.

> For all of the above, the Executive Order directs the commissioner to benchmark Pennsylvania requirements against regional averages. As defined in the Executive Order, regional states include Ohio, West Virginia, Maryland, Delaware, New Jersey, New York, Massachusetts, Rhode Island, Connecticut, New Hampshire, Vermont, and Maine. In any case where Pennsylvania exceeds the regional average, additional information is provided on the Commonwealth's requirements and whether they are necessary to protect the health and safety of residents.

(Bureau Report at 4-5.) The examination resulted in the preparation of the 600-page Bureau Report, which included, *inter alia*,

> • The number of disciplinary actions imposed on licensees each year for the past five years, including fines, penalties, license suspensions, and other disciplinary actions;
> • The ten most frequent disciplinary actions resulting in a fine;
> • Interstate Compacts or Reciprocity Agreements; and
> • Demographic information about the composition of the boards and commissions and the licensed population.

(*Id.* at 5.) The Commission stressed that

> while licensure is the strictest form of occupational regulation, there are a variety of other options—ranging from private certifications, to bonding and insurance requirements, to registration and certification—which can be utilized to help protect the public and ensure high quality delivery of services, without creating an unnecessary bar to entry to a profession.

(*Id.*) Yet, while the trend nationally is for states to examine the need for existing licensing requirements, the General Assembly has introduced licensure bills in recent legislative sessions to register additional occupations. (*Id.* at 11.)

With regard to natural hair braiding, the Bureau Report revealed that in early 2017 "South Dakota Governor Dennis Daugaard signed legislation to exempt natural

hair braiding from the practice of cosmetology, becoming the 21st state to deregulate this occupation." (*Id*.) In a similar vein, since the 2012 release of a report commissioned by Michigan Governor Rick Snyder, "Michigan has de-licensed eight professions . . . and has eliminated requirements in" other areas, including the number of training hours necessary to obtain a barber's license. (*Id*.) Nebraska also has reformed the licensing process for hair braiders. (*Id*. at 10). Hair braiders in Connecticut are not required to obtain a cosmetology license. (*Id*. at 62.) Pennsylvania is one of only four states in the regional comparison group that requires hair braiders to obtain a cosmetology license, albeit a limited license, along with Massachusetts, New Jersey, and Vermont. (*Id.* at, 62.)[20]

Since the publication of the Bureau Report cited by Petitioner, legislation was reintroduced in 2021 to eliminate licensing requirements for natural hair braiders in Pennsylvania. *See* S.B. 60 (Reg. Sess. 2021-2022) and H.B. 591 (Reg. Sess. 2023-2024). The stated purpose of the latter proposed legislation seeks to "reform Pennsylvania's approach to occupational licensing and create jobs and opportunities for small business entrepreneurs across the state." H.B. 591 Memorandum (Reg. Sess. 2023-2024). Noting that "overregulation stifles the industry's potential[]" by requiring all beauty professionals to spend thousands of dollars and hours to attend cosmetology programs in areas where practitioners are already skilled and have a client base, the bill seeks to allow niche practitioners to "be able to use their skills to fully realize their small business aspirations and pay taxes instead of being forced to work in underground economies." *Id*.

---

[20] The Board indicates that since the report was issued, both Vermont and Massachusetts have eliminated the requirement for natural hair braiding licensure, and New Jersey instituted limited licensure requirements. (Board's Br. at 23 n.2.)

When discussing the *Ladd* line of cases, the Board acknowledged that "[i]t is clear from the holding by [this] Court in granting Ladd's challenge that if [the] RELRA had included a specific limited licensing provision narrowly tailored to Ladd's chosen profession, her claim would have failed." (Board's Br. at 13.) In light of all of the foregoing, we find the requirement for Petitioner to enroll in a course for 300 hours of training and pass an examination in English is not narrowly tailored to Petitioner's chosen profession of natural hair braiding. Rather, Petitioner has shown them to be excessively onerous, cost prohibitive and/or unavailable, and unnecessary for a natural hair braider with Petitioner's expertise in the craft. *Gambone*, 101 A.2d at 637; *Ladd III*, slip. op at 33. As Petitioner has demonstrated the Law's limited licensing requirements for natural hair braiders is "unreasonable, unduly oppressive, or patently beyond the necessities of the case," as applied to her, we next must determine whether those requirements bear "a real and substantial relation to the" public interest they seek to advance. *Nixon*, 839 A.2d at 287.

The General Assembly's enactment of Section 5(b)(3)(i) of the Law evinces an understanding that the amount of training necessary for natural hair braiding does not rise to the level of training needed to be a fully licensed cosmetologist. Notwithstanding, in carving out limited licensure requirements under the Law for natural hair braiders, the Legislature did not do so in a way that is reasonably tailored to meet the State's health and safety interests in protecting the clientele who will seek the type of service that Petitioner provides, *Ladd III*, slip op. at 33-34, nor do the limited licensing requirements for 300 hours of education bear a "real and substantial relation" to the public interest they seek to advance. *Nixon*, 839 A.2d at 287. First, the Board has not provided sufficient evidentiary support to show natural hair braiding poses significant health or safety risks to consumers or the public that

30

can be served by the requirements of the Law. The Board presented no evidence to contradict Petitioner's testimony that there have been no complaints against either her or the Salon, nor did it present evidence of health risks associated with hair braiding or pertaining to the frequency of complaints against natural hair braiding facilities in general. In fact, the majority of states have no requirements for natural hair braiders. (Bureau Report at 11, 62.) Conversely, Petitioner's inability to continue to operate the Salon for lack of a license will rob her of the only profession she knows. Certainly, the state has an interest in protecting the health and safety of patrons and of assuring that those who offer natural hair braiding have some basic knowledge of sanitation. However, the Board's licensing requirements for Petitioner to take a 300-hour course devoted to scalp care, anatomy, and training in the cognitive and manipulative skills of natural hair braiding and pass an examination in English to engage in a trade which requires no chemicals, heat, sharp instruments, or dyes, and which Petitioner has practiced without complaint for decades, is not rationally related to the advancement of that interest.

## C.    Other Jurisdictions' Holdings

Our decision in this regard can be guided by the holdings in other jurisdictions upon which Petitioner relies. For example, Petitioner cites the holding in *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1108 (S.D. Cal. 1999), wherein a California district court granted summary judgment in favor of an African hair braider whose technique of "locking" hair for compensation was similar to that of hair braiding. The plaintiff asserted an as-applied challenge to California's Barbering and Cosmetology Act,[21] claiming "that the regulatory scheme treats persons performing

---

[21] Cal. Bus. & Prof. Code §§ 7301-7368, 7389-7389.5, 7395.1-7427.

different skills as if their professions were one and the same, *i.e.*, it attempts to squeeze two professions into a single, identical mold." *Id.* at 1103. Applying a rational basis test, the district court held that in light of the "almost nonexistent" threat of injury or disease the practice posed and the fact that very few hours of the required training were devoted to health concerns, California's requirement for an African hair stylist to take a 1600-hour cosmetology course and pass a licensing exam was not rationally related to a legitimate government interest as applied to plaintiff. *Id.* at 1107, 1113, 1118-19.[22] Petitioner also looks to *Clayton v. Steinagel*, 885 F. Supp. 2d 1212 (D. Utah 2012), which cites to and relies upon *Cornwell*'s due process analysis. *Id.* at 1215, n.9. Therein, an unlicensed African hair stylist who only braided hair brought an action challenging the constitutionality of Utah's cosmetology/barber school's curriculum and licensing scheme as applied to her. In finding an insufficient rational relationship between public health and safety and the required regulatory scheme as applied to the plaintiff, the court found, *inter alia,* that "[i]t was undisputed [therein] that the legislature never considered African hair braiding when creating its licensing scheme" and that "[b]y the state's own admission, 1400 to 1600 of the 2000 hours of the mandatory curriculum are irrelevant to African hair braiding, yet [the plaintiff] is still required to take those classes, and be tested on those topics, in order to braid hair." *Id.* at 1214-15.

_____

[22] The Ninth Circuit overturned the *Cornwell* court's equal protection analysis in *Merrifield v. Lockyer*, 547 F.3d 978, 985 (9th Cir. 2008). Therein, the plaintiff engaged in "non-pesticide animal damage prevention and bird control," as opposed to most pest controllers, who used pesticide-based practices, and challenged the application of California's pest control license requirements claiming that he should be exempt from such license requirements because he did not use pesticides. *Id.* at 980. Citing *Cornwell*, he argued that treating him the same as pesticide-based pest controllers violated his rights to equal protection. *Id.* at 980, 984. The Ninth Circuit rejected this argument, distinguishing the cases on their facts, but essentially upheld *Cornwell*'s substantive due process analysis. Notwithstanding, clearly, the concern with working with pesticides is distinguishable from our focus on natural hair braiding.

The Board argues the facts herein are more analogous to those presented in *Bah*. Therein, African hair braiders in Tennessee were required to complete 300 hours or 9 credit hours of training to obtain a natural hairstylist cosmetology license. *Bah*, 610 F. App'x at 549. Like Petitioner, the *Bah* plaintiffs argued that the requirements were unduly burdensome as applied to them because they were well skilled in their art, which they performed safely and without the need for chemicals, and were cost prohibitive, which prevented them from pursuing their chosen livelihood. Applying a rational basis test, the court found the fact that the plaintiffs already knew "how to perform their craft" did "not negate Tennessee's legitimate interest in public health and safety." *Id*. at 551. The court opined that professionals sometimes are already skilled in their craft before attending formal schooling and attaining licensures, but that fact "alone does not negate the state's interest in ensuring that [those] professionals receive training before they are unleashed onto the public." *Id*. The court also found that the plaintiffs' pleading of facts that African hair braiding is safer than alternative chemical treatments and declaring "in a conclusory fashion that African hair braiding is generally 'safe' do not factually negate Tennessee's legitimate interest in public health, safety, and welfare." *Id*. at 552 (citation omitted).

Of course, this Court is not bound by the *Bah* decision whose logic is less convincing herein where the Legislature has established onerous requirements for the licensure of natural hair braiders, but, ironically, requires no training for one to hold oneself out as a tattoo artist, which necessarily involves the use of sharp objects, chemicals, and dyes, or for EMTs, who are responsible for others' lives on a daily basis. While we acknowledge the Commonwealth's interest in protecting the health and safety of Petitioner's clientele, we find the rigors of the Law as applied to

33

Petitioner, who is well skilled in her craft which requires the use of only one's hands, does not bear a substantial relation to that interest. *Nixon*, 839 A.2d at 287; *Gambone*, 101 A.2d at 637. In fact, as applied to Petitioner, the Law works in contravention to the state's professed interest in health and safety. For example, being required "to spend scarce time and resources on learning irrelevant skills,[] actually impedes development of knowledge in their own craft. Thus, it aggravates the very harms the State seeks to avoid." *Cornwell*, 80 F. Supp. 2d at 1112.

## IV. CONCLUSION

In light of the foregoing and upon applying the *Gambone* test, we hold that Petitioner has presented sufficient evidence to establish that the Law's limited license requirements set forth in Section 5(b)(3)(i) are unconstitutional as applied to her as they are violative of Petitioner's constitutional right to pursue her chosen occupation under article I, section 1 of the Pennsylvania Constitution. While it may be reasonable for the Legislature to regulate the natural hair braiding industry, the requirement for 300 hours of training and an examination in English to ensure Petitioner, who has practiced the art of natural braiding for most of her life, is properly trained in basic areas like sanitation, anatomy, and scalp care and possesses the cognitive and manipulative skills necessary to braid hair is unduly burdensome. Petitioner and Dr. Edi testified regarding the difficulty Petitioner and others in the Philadelphia area face in finding a school to meet the Law's requirements, which will make it nearly impossible for Petitioner to hire licensed natural hair braiders to operate the Salon. They also spoke of the costliness of such training and the unavailability of accommodations to address Petitioner's language barrier. Moreover, the Law is not reasonably related to protecting the safety and health of

34

patrons of the Salon, where Petitioner uses no chemicals, dyes, or heat, and she has been practicing her craft for most of her life without complaint. *Nixon*, 839 A.2d at 287; *Gambone*, 101 A.2d at 637. For these reasons, we reverse the Board's March 8, 2022 Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maimouna Thiam t/d/b/a        :
Rama Hair Braiding Salon,      :
             Petitioner        :
                                           :
              v.        :  No.  301 C.D. 2022
                                           :
Bureau of Professional and     :
Occupational Affairs, State    :
Board of Cosmetology,          :
             Respondent    :

## O R D E R

**NOW**, July 25, 2023, the Final Adjudication and Order of the Bureau of Professional and Occupational Affairs, State Board of Cosmetology, dated March 8, 2022, is **REVERSED**.

 

                                      **RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maimouna Thiam t/d/b/a :
Rama Hair Braiding Salon, :
                Petitioner :
           :
          v. :
           :
Bureau of Professional and :
Occupational Affairs, State :
Board of Cosmetology, : No. 301 C.D. 2022
          Respondent : Argued: April 3, 2023


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE STACY WALLACE, Judge


## OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE FIZZANO CANNON          FILED: July 25, 2023


Notwithstanding the majority's careful analysis, I respectfully dissent. Although I am sympathetic to Ms. Thiam's need to earn a living, I believe the facts as proposed by the Hearing Officer (HO) and found by the State Board of Cosmetology (Board) preclude this Court from sustaining an as-applied constitutional challenge to the licensing statute here.

Ms. Thiam asserts only an as-applied constitutional challenge to Pennsylvania's statutory natural hair-braiding license requirement. A challenge to the constitutionality of a licensing statute is subject to rational basis analysis. *See Diwara v. State Bd. of Cosmetology*, 852 A.2d 1279, 1283-84 (Pa. Cmwlth. 2004).

A rational basis for the licensing requirement is not hard to discern. Section 1 of the statute commonly known as the Beauty Culture Law[1] defines "natural hair braiding" as "the practice of utilizing techniques that result in tension on hair roots of individuals, such as twisting, wrapping, weaving, extending, locking or braiding of the hair . . . ." 63 P.S. § 507. It is easy to see that safe and healthy practices should be followed by those engaging in techniques that cause tension on hair roots and, thus, on the scalp. Similarly, beyond the safety of the braiding techniques themselves, the need for sanitary practices, including cleanliness of hands and surfaces, is self-evident, and the legislature has an interest in promoting such practices. A licensing requirement clearly bears a rational relation to that interest. *See Diwara*, 852 A.2d at 1284 (explaining that in conducting a rational basis analysis, "the reviewing court is free to hypothesize reasons which the legislature could have had for the classification, i.e., the courts are free to hypothesize a legitimate state goal which the classification serves [and] the legislature is not required to provide evidence to justify its classification").

Applying a rational basis analysis here, I am forced to conclude that the Board was correct in determining that the evidence was insufficient to sustain Ms. Thiam's burden of proving that the licensing statute was unconstitutionally oppressive as applied to her. The Board may use an HO to take evidence, although the Board itself is the ultimate fact finder. *Bentley v. Bureau of Pro. & Occupational Affs., State Bd. of Cosmetology*, 179 A.3d 1196, 1201 (Pa. Cmwlth. 2018) (citing *Pellizzeri v. Bureau of Pro. and Occupational Affs.*, 856 A.2d 297, 301 (Pa. Cmwlth. 2004)). Here, the Board adopted the HO's proposed findings of fact. Reproduced

---

[1] Act of May 3, 1933, P.L. 242, *as amended*; 63 P.S. §§ 507-527 *added by* the Act of July 7, 2006, P.L. 704.

Record (RR), Item #20 at 1-2.[2]  Those facts, as found by the Board, are insufficient to sustain Ms. Thiam's as-applied constitutional challenge.  Most notably, the Board found *as a fact* that Ms. Thiam failed to show that she was unable to get a natural hair braiding license, either for her salon or individually.  Ms. Thiam failed to show that she ever applied for either license but was denied by the Board.  *Id.* at 4 & App. A at 7.  The record also fails to establish that such an application would have been futile.

Additionally, regarding an individual license, although Ms. Thiam asserted that she does not speak much English, the Board's examiner routinely deals with language issues.  RR, Item #20, App. A at 7.  Thus, the Board implicitly rejected Ms. Thiam's argument that her language hardship precluded her from obtaining a license.  *Id.*, Item #20 at 1-2 (adopting the HO's findings of fact).

Ms. Thiam also failed to show that her New York cosmetology certification was insufficient to support granting her a Pennsylvania limited license. She entered into evidence a certificate that she completed a cosmetology course at an academy in New York.  RR, Item #20, App. A at 3.  However, the record is bare of evidence concerning what subjects were covered in that course, how many hours of study and practical training it entailed, whether it satisfied the requirements to obtain a limited natural hair braiding license – or even a full cosmetology license – in Pennsylvania, or whether Ms. Thiam ever submitted it with an application to the Board.  *See* Section 5(b)(3)(ii) of the Beauty Culture Law 63 P.S. § 511(b)(3)(ii) (requiring 300 hours of instruction in "[B]oard-approved subjects relating to sanitation, scalp care, anatomy and natural hair braiding in a cosmetology school . . .").

_____

[2] The reproduced record is not properly paginated as required by Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173.  Citations here to the reproduced record are in accord with the numbering and designations used therein.

Notably, the statute does not specifically require that the instruction be taken in a Pennsylvania cosmetology school. *See* 63 P.S. § 511(b)(3)(ii); RR, Item #20, App. A at 7. Thus, the record fails to establish that Ms. Thiam's New York certification was insufficient to qualify her to seek a natural hair braiding license in Pennsylvania.

Ms. Thiam similarly entered into the record a copy of her registration to practice natural hair braiding in Florida. RR, Item #20, App. A at 11-12. Section 9 of the Beauty Culture Law contains a reciprocity provision that allows anyone who has practiced any form of cosmetology for at least two years under a license from another state to obtain a Pennsylvania license if the Board is satisfied that the standards provided for licensure under the laws of the other state are substantially the same as in Pennsylvania. 63 P.S. § 515. However, Ms. Thiam offered no evidence of how long she practiced hair braiding in Florida. Thus, she failed to offer any evidence to demonstrate whether or not her Florida license would have allowed her to become licensed in Pennsylvania. RR, Item #20, App. A at 8.

Further, the HO rejected Ms. Thiam's claim that the course of instruction she took in Philadelphia in 2013 was not relevant to hair braiding. *Cf. Diwara*, 852 A.2d at 1285 (Pa. Cmwlth. 2004) (concluding that natural hair braiders had not met their burden of proof in an as-applied constitutional challenge to the licensing statute, where there was insufficient evidence that cosmetology schools do not provide instruction rationally related to natural hair braiding). In that regard, there was evidence that Ms. Thiam's difficulties with English and some health issues were the primary reasons for her failure to complete that course and obtain a limited natural hair braiding license. RR, Item #20, App. A at 4.

Moreover, the HO observed that Ms. Thiam could have obtained a Pennsylvania limited license prior to 2010 without any education or examination

requirement, but she did not do so. RR, Item #20, App. A at 7 n.5. Under Section 5(b) & (c) of the Beauty Culture Law, the instruction and examination requirements for a natural hair braiding license were inapplicable to anyone who applied for a license within a year after promulgation of the Board's applicable regulations and provided proof of at least three consecutive years of natural hair braiding practice immediately prior to submitting the application; the licensee then had two years to complete 150 hours of cosmetology instruction including "scalp care, hygiene and occupational safety." 63 P.S. § 511(b) & (c).[3] The Board adopted its final regulations in January 2009. 39 Pa. Bull. 219 (2009). Thus, Ms. Thiam had until January 2010 to apply for a license without having to take courses or take an examination. Thereafter, she could have taken half the number of hours of courses, spreading them out over two years, and she still would not have needed to take the examination. However, she did not take advantage of that opportunity, and the record contains no explanation for her failure to do so.

In short, overall, the HO gave very little mitigating weight to Ms. Thiam's asserted challenges in trying to get a license. RR, Item #20, App. A at 10; *see also Bentley*, 179 A.3d at 1200 n.3 (Pa. Cmwlth. 2018) (noting that "[t]he weight to be given to evidence of mitigating circumstances is a matter of agency discretion"). The HO weighed the evidence and found it insufficient to sustain Ms. Thiam's burden of proof, and the Board adopted that finding. In light of the facts as found by the HO and adopted by the Board, I am forced to agree with the Board that the record does not support a conclusion that the licensing statute is unconstitutionally oppressive *as applied to Ms. Thiam*. Rather, the findings of fact

---

[3] Section 7.43 of the Board's subsequently enacted regulations specified that the 150 hours of education must include 50 hours on scalp care, 50 hours on hygiene, 25 hours on occupational safety, and 25 hours on natural hair braiding techniques. 49 Pa. Code § 7.43.

indicate that Ms. Thiam's failure to obtain a natural hair braiding license are fairly attributable to her own inaction rather than any unavoidable language barrier or other hardship. I believe, therefore, that the only way to reach a conclusion of as-applied unconstitutional oppression would be through factual findings that would impermissibly contradict those of the Board.

In addition, although we are told legislation is pending that would alleviate the licensing burden for natural hair braiders, it has not yet been enacted, and its pendency does not render the existing licensing statute unconstitutional. As this Court recently observed in rejecting a facial constitutional challenge to the natural hair braiding license requirement, "[t]he legislature has decided to regulate natural hair braiding services, and it is for the legislature, not this Court, to decide whether deregulation of such services is warranted." *Diop v. Bureau of Pro. & Occupational Affairs, State Bd. of Cosmetology*, 272 A.3d 548, 564 (Pa. Cmwlth. 2022).[4]

For these reasons, I believe that the Board's decision must be affirmed. Accordingly, I respectfully dissent.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[4] *Diop* was brought in this Court's original jurisdiction. We sustained preliminary objections to the petitioners' facial constitutional challenge but allowed part of the as-applied challenge to survive preliminary objections. However, there has been no docket activity in the case since the last pleading was filed in April 2022. Thus, there has been no final as-applied ruling in *Diop*.